CARRICO *et al.* v. COUCH *et al.*

No. 3781. Opinion Filed February 23, 1915.

(146 Pac. 447.)

1. OFFICERS — County Superintendent — Compensation — Increase During Term. At the time of the adoption of the Constitution, the salary of the county superintendent of public instruction,

elected at that time, being fixed at $1,200 per annum by section 18 of the Schedule, because of article 23, section 10, of the Constitution, cannot be changed during his term of office, and was not increased to $1,800 by Act of March 24, 1909. (Laws 1909, c. 11, art. 2.)

2.    SCHOOLS AND SCHOOL DISTRICTS—County Superintendents —Compensation. Comp. Laws 1909, section 8211, construed, and held, that the county superintendent of public instruction, as a member of the board of county examiners thereby created, is not entitled to receive for his services the sum of $3 per day.

3.    SCHOOLS AND SCHOOL DISTRICTS—County Superintendents— Compensation. Comp. Laws 1909, section 7981, construed, and held, that the county superintendent of public instruction is entitled to $1 for visiting each school, and not that amount for visiting each room at places having two or more rooms.

4.    APPEAL AND ERROR—Parties—Death—Order of Revivor—Nunc Pro Tunc Order. Where this court has been properly invoked to revive a cause against the personal representative of a defendant in error, without the consent of such representative, and where, intermediate the application and our order of revivor, the year provided for in Rev. Laws 1910, section 5293 expires, held, that this court's delay in passing on the motion will not be allowed to prejudice the movant, and the order will be entered nunc pro tunc as of the date when the motion was filed.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by George W. Carrico and others against Mary D. Couch and others. Judgment for defendants, and plaintiffs bring error. Reversed.

*Sam Hooker* and *C. W. Stringer,* Co. Atty., for plaintiffs in error.

*Grant, Stanley, Stuart, Cruce & Gilbert* and *Wright & Blinn,* for defendants in error.

TURNER, J.  On September 13, 1911, the board of county commissioners of Oklahoma county, sued Mary D. Couch, as principal, and Oscar Reagan and E. A. De Tarr, as sureties upon her

Form 22

official bond as county superintendent of public instruction in and for Oklahoma county. Several breaches of the bond were alleged, and judgment was prayed against defendants for $1,606.07. After answer filed in effect a general denial and a cross-petition to recover $2 overpaid, there was trial to the court upon this agreed statement of facts:

"First. It is agreed that Mary D. Couch was elected superintendent of public instruction for Oklahoma county on September 17, 1907, and that she qualified as such, took her oath of office, and entered into the discharge of the duties thereof on November 17, 1907.

"Second. That during her term of office, as aforesaid, from November 17, 1907, to January 9, 1911, she drew from Oklahoma county the sum of $180 as a member of the examining board of Oklahoma county, and that she served 60 days as a member of said board of examiners.

"Third. That, during her term of office as aforesaid, she drew $1,073.32 as her salary as superintendent, more than $100 per month, and that she drew no more than said salary would amount to provided she was allowed $1,800 a year from March 24, 1909, and that Oklahoma county, as shown by the federal census of 1907, was a county of more than 40,000 inhabitants, and was March 24, 1909, and now is, a county of more than 40,000 inhabitants.

"Fourth. That during the years of 1908, 1909, and 1910, there were 109 separate schools, and 145 different rooms having separate teachers outside of cities of the first class in Oklahoma county; and that during the year of 1909 defendant Mary D. Couch received $118 for her services in visiting said schools; that during the year 1910 she received $186 for her services in visiting said schools; that during the school year of 1908-09 she received $12 for services in visiting said schools; that during the school year 1909-10 she received for her services in visiting schools the sum of $145; that during the school year 1910-11 up to January 9, 1911, she received the sum of $123 for her services in visiting schools. It is further agreed that the defendant Mary D. Couch received no pay for visiting any school not actually visited, nor

visiting any school twice during any school year as interpreted by her—that is, a year commencing July 1st and ending June 30th of the following year—except that it is admitted by plaintiffs and defendants that in the schools of Capitol Hill, Harrah, Luther, and other places having two or more rooms in one school district, that she charged $1 for visiting each room.

"Fifth. That during her term of office, and after March 24, 1909, she received for clerk hire, $268.75, and that amount was actually expended by her for clerical help in addition to the salary drawn by the clerk provided for by the law."

From which the court found:

First. That Mary D. Couch was elected superintendent of public instruction for Oklahoma county on September 17, 1907, and on the 17th day of September, 1907, qualified as such and entered into the discharge of the duties of superintendent of public instruction in and for said county.

Second. That during her term of office she drew from Oklahoma county $180 as a member of the examining board in and for said county to which she was not entitled, and that she and her bondsmen are responsible to Oklahoma county therefor.

Third. That after March 24, 1909, and before the expiration of her term of office, she drew from Oklahoma county $268.75 for clerk hire expended by her over and above the salary allowed by law for the clerk in the office of superintendent, and that she and her bondsmen are responsible to Oklahoma county for said $268.75.

Fourth. That, while she was county superintendent aforesaid, she drew from Oklahoma county $52 for services in visiting schools to which she was not entitled, inasmuch as she drew $1 per room for visiting said schools, where under the law she was only entitled to $1 per school, and in this she overdrew for visiting schools her account in the sum of $52, for which she and her bondsmen are liable.

Fifth. The court further finds that the said Mary D. Couch was entitled to the increase of salary allowed by the law of 1909,

and that the $1,073.32 which the said Mary D. Couch drew from Oklahoma county for the increase in salary was permissible under the law, and she is entitled thereto.

Sixth. The court further finds that said Mary D. Couch, as superintendent, has overpaid the county $2 for examination fees, and that she is entitled to credit thereof for the same and on March 20, 1912, rendered and entered judgment in favor of plaintiff and against defendants for $498.75.

From that part of the judgment finding that she was entitled to the $1,073.32 increase in salary, plaintiffs appealed, and from the remainder thereof defendants prosecuted their cross-appeal, to this court.

By act of the Legislature of the territory of Oklahoma adopted prior to statehood, the office of county superintendent was created, and the salary of that office fixed at $1,200 per annum. This was the law at the advent of statehood. Const. art. 17, sec. 2, provides:

"There is hereby created, subject to change by the Legislature, in and for each organized county in this state, the offices of judge of the county court, * * * superintendent of public instruction. * * *"

And the Schedule, sec. 18:

"Until otherwise provided by law, the terms, duties, powers, qualifications, and salary and compensation of all county and township officers, not otherwise provided by this Constitution, shall be as now provided by the laws of the territory of Oklahoma for like named officers. * * *"

And section 2 of the Schedule:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

The court erred in holding that the act of March 24, 1909, raised the salary of the defendant county superintendent from $1,200 to $1,800 per annum, and in rendering judgment accordingly. *Board of County Commissioners v. Henry et al.,* 33 Okla. 210, 126 Pac. 761. We will not determine whether this $1,073.32, allowed defendant as an increase in salary by the board of county commissioners, was a voluntary payment made her by the board and as such cannot be recovered. This for the reason that this question was not raised in the lower court by demurrer or otherwise, and cannot be raised here for the first time, as is sought to be done by counsel for Mary D. Couch in the brief filed since the submission of the cause.

Considering her cross-appeal, the court was right in not allowing Mary D. Couch, as county superintendent, the $180 drawn by her as a member of the examining board. The statute fixing her compensation for such service reads .(Comp. Laws 1909, sec. 8211):

"In each county there shall be a board of county examiners composed of the county superintendent, who shall be *ex officio* chairman of the board, and two competent persons, holders of first grade certificates, or of state certificates, or of diplomas from some territorial or state university, normal, or agricultural college, who shall be appointed by the county superintendent and shall serve from the time of their respective appointment until their successors are appointed, and each of whom shall receive for his services the sum of three dollars per day, not to exceed five days in any one quarter of the year."

"Each of whom," when used in this connection, means each of the two appointed, and does not include the county superintendent.

The court was right in holding that the county superintendent overcharged $52 for visiting schools, to which she was not entitled. She was only entitled to $1 for visiting each school, and not $1 for visiting each room at places having two or more rooms, as it seems she did. Comp. Laws 1909, after providing

for the salary of the county superintendent, provides (section 7981):

"* * * In addition to the annual salary, he shall receive one dollar for each school visited within his jurisdiction, provided this shall not be construed to include more than one visit in any school year."

We are therefore of opinion that this case should be reversed and remanded, but before leaving the case our attention is called to the fact that since its submission in this court, to wit, on October 17, 1912, Oscar Reagan, one of the sureties on the bond sued and one of the defendants in error here, died, and that Cora Reagan, his wife, has been appointed and qualified his administratrix on November 2, 1912, and that after notice served on her on October 15, 1913, a motion to revive was made, wherein she was required to answer thereto on or before November 6, 1913. Thus on that date we were properly invoked to enter an order of revivor pursuant to such notice, which was filed in this court October 14, 1913. Although opposed, we think the motion should be sustained and the action revived against Cora Reagan, as administratrix, pursuant to Rev. Laws 1910, sec. 5293, wrich provides:

"An order to revive an action against the representatives or successors of a defendant shall not be made without the consent of such representatives or successors, unless in one year from the time it could have been first made, except as otherwise provided by law."

And that, too, although the year mentioned in the statutes expired intermediate the filing of the notice and motion to revive and our order of revivor. This for the reason that, this court being duly moved to revive in time, no one will be permitted to suffer on account of our failure to act before the expiration of the year. In *Crawford v. Wilson*, 4 Barb. (N. Y.) 524, the court said:

"* * * Whenever a party is delayed by the act of the court upon common-law principles, without regard to the lapse of time, allow the judgment to be entered up, as of a term when the party was alive. A delay arising from the act of the court is never allowed to prejudice the party [Spaulding v. Congdon], 18 Wend. 543; [Ryghtmyer v. Durham], 12 Wend. 245; Springsted v. Jayne, 4 Cow. [N. Y.] 423; [Mackay v. Rhinelander], 1 Johns. Cas. [N. Y.] 410, 2 Tidd's Pr. 965."

The action will therefore stand revived, and a *nunc pro tunc* order will be entered to that effect, as of the date of the motion to revive, to wit, October 14, 1913.

It is no defense to the motion to revive to say that this claim was not presented to the administratrix within four months after the date of the notice required of her by Rev. Laws 1910, sec. 6336, and hence the claim is barred. This for the reason that, construing sections 6338 and 6348 together, it seems that a contingent claim, such as is the claim in controversy (*Southern Milwaukee Co. v. Murphy,* 58 L. R. A. note vi, page 86), need not be presented within that time, but "may be presented within one month after it becomes due and absolute." But as to this we express no opinion, for the reason that the question is not properly before us and cannot properly arise until, if at all, the claim is reduced to judgment and the judgment is sought to be probated against the estate.

The cause is accordingly reversed, and judgment rendered against defendants for $1,073.32 overdrawn by Mary D. Couch as salary, but as to all things involved in her cross-appeal the judgment is affirmed.

All the Justices concur.