O'NEILL, Adm'x, et al. v. LAUDERDALE.

No. 11365—Opinion Filed Jan. 18, 1921.

(Syllabus by the Court.)

1. Evidence—Hearsay—Pedigree—Heirship.

The introduction of hearsay testimony to prove pedigree of persons is often permissible upon the ground of the interest in declarations of persons from whom the descent is made out, and their consequent interest in knowing the connections of the family, but the rule is restricted to the declarations of persons, deceased, who were related by blood or marriage to the person, and therefore interested in the succession in question, and limited to the members of the family, who may be supposed to have known the relationship which existed in its different branches.

2. Same.

It is difficult, if not impracticable, to deduce from the books any precise and definite rule relating to the introduction of hearsay testimony in case of pedigree, as the rule must vary by the circumstances in each case, and it is not every statement or tradition in the family that can be admitted in evidence, but the same must be from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they are speaking the truth and they could not be mistaken.

3. Trial—Directing Verdict.

The court may direct the jury to return a verdict where the undisputed facts are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside the verdict returned in opposition to it.

4. Descent and Distribution—Action for Land Against Administrator and Heirs— "Contingent Claim" for Rents.

In an action against the administrator and the heirs of deceased to recover possession of certain land, which is held adversely to plaintiff, and for rents for the use and occupancy of said land during the time the same has been adversely held, the claim for rents of the land is a contingent claim, such as provided for in sections 6338 and 6348, Revised Laws 1910, and may be presented within one month after the final determina-

tion of the suit adjudicating the title to said real estate.

**5. Same—Claim Against Estate—Enforcement by Action Against Heirs.**

Where a claim against the estate of a deceased person does not accrue or become enforceable until after the administration of the estate has been distributed and passed into the hands of the heirs, its collection may be enforced by a direct action, in the district court, against the heirs of the deceased, and they may be held liable in such an action to the extent of the assets received by them from the estate.

**6. Descent and Distribution—Indian Allotment.**

Julius Webster, a full-blood Choctaw Indian, died seised of his allotment, leaving as his sole heir Ella Webster, his daughter, also enrolled as a full blood, who thereafter died in 1920 seised of her own allotment and the allotment inherited from her father, Julius Webster, leaving as next of kin, an aunt of the whole blood and an aunt of the half-blood, one being a full sister and one a half sister of Julius Webster, both enrolled as full bloods. Held, by virtue of section 8427, Revised Laws 1910, the two aunts, one being of the half-blood and one of the full-blood in the same degree from deceased, both being of the blood of Julius Webster and Ella Webster, the allotment descended to them in equal shares.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by Eliza Lauderdale against Bird E. O'Neill, administratrix of the estate of John O'Neill, deceased, and others to recover interest in Indian allotments and for use and occupation of same. Judgment for plaintiff, and defendants being error. Affirmed.

Womack & Brown, for plaintiffs in error.

J. M. Sandlin and W. F. Semple, for defendant in error.

McNEILL, J. Eliza Lauderdale commenced this action in the district court of Stephens county against Bird E. O'Neill, as administratrix of the estate of John O'Neill and Bird E. O'Neill, Elizabeth O'Neill, Annie Sparks, and T. M. Beckett and other defendants to recover an undivided one-half interest in the allotments of Julius Webster and Ella Webster, situated in said county, and to recover certain rents for the use and occupation of said land. The plaintiff alleged in her petition that Julius Webster, enrolled as a full-blood member of the Choctaw Tribe of Indians, died intestate on the 7th day of February, 1905, seised and possessed of his homestead and surplus allotments, leaving as his sole heir Ella Webster, his daughter. Thereafter, in 1910, Ella Webster, enrolled as a full-blood member of the Choctaw Tribe, died intestate, seised of her homestead and surplus allotments and the allotments inherited from her father, and left as her sole heirs, the plaintiff herein and Elsie Billy, each of whom inherited an undivided interest in said allotments.

The defendants admit the lands were allotted to Julius Webster and Ella Webster, and admit that Julius Webster died on the 7th day of February, 1905, and his allotment descended to his daughter, Ella Webster, subject to a dower interest of his wife in a part of the allotment, and Ella Webster died in September, 1910, and claim title by reason of various conveyances. Defendants admit that Elsie Billy is the daughter of Elizabeth Webster, but deny that Elizabeth Webster and Elizabeth Houston were one and the same person, and deny that plaintiff was the daughter of Elizabeth Webster, by a former marriage with Sam Houston.

The case was first tried in the district Court of Stephens county, and the jury returned a verdict adverse to Eliza Lauderdale and she appealed; the case being reported as Lauderdale v. O'Neill, 74 Oklahoma, 177 Pac. 113. The opinion of this court in that case reversed the judgment of the district court, holding the evidence of defendants was not sufficient to support a judgment in their favor. After the plaintiff and defendants had introduced their evidence upon the second trial of the case, the court instructed the jury to return a verdict for the plaintiff, and entered judgment for the plaintiff for an undivided one-half interest in the land and for $2,775 for the use and occupation of said land. From said judgment, the defendants have appealed.

For reversal of said judgment plaintiffs in error first brief the question that the court erred in sustaining a demurrer to the evidence offered on behalf of plaintiffs in error and in directing a verdict for the plaintiff below. The argument upon this question is directed to the sole question regarding the evidence whether Eliza Lauderdale and Elsie Billy, nee Webster, were half-sisters and daughters of the same mother, to wit, Elizabeth Webster, nee Houston.

The plaintiff, as a witness in her own behalf, and three other witnesses produced by her testified directly and positively that Elizabeth Webster, the mother of Elsie Billy, and Elizabeth Houston, the mother of Eliza Lauderdale, were the same person; that the mother was first married to Samuel Houston and plaintiff was a child of that marriage, and thereafter Elizabeth Houston married Francis Webster and Elsie Billy is the daughter of that marriage.

In addition to this testimony, the plaintiff introduced a decree of the county court of Atoka county rendered in a proceeding in said court to determine the heirs of Ella Webster; it being admitted that Ella Webster had died in Atoka county, and that the county court of Atoka county had jurisdiction to determine her heirs. The decree of the county court of Atoka county recited that Ella Webster died intestate in said county and left surviving her, as her next of kin, Elsie Billy, nee Webster, and Eliza Lauderdale, nee Houston, and that both were daughters of Elizabeth Webster, nee Houston. It was admitted, however, that notice of appeal had been given in the proceeding to determine the heirs. The record does not disclose whether the determination of heirship in that proceeding has become final.

The defendants produced the same witnesses as in the former trial and introduced practically the same testimony which this court in the former opinion held was negative testimony and not sufficient to support a judgment for the defendants. In addition to the witnesses produced at the former trial, the defendants produced three other witnesses, to wit, Frank Jones, Redmond Bond, and William Riddle, and an affidavit of Elsie Billy. The testimony of Redmond Bond and Frank Jones did not prove any facts, but was negative testimony, and did not strengthen the testimony introduced in the former trial.

The evidence of Eliza Lauderdale and her witnesses was to the effect that Sam Houston and Elizabeth Houston were married and lived in the Choctaw Nation close to what is now the town of Caddo and what was then Blue county, and that the plaintiff, Eliza Lauderdale, was the daughter of said marriage and born about 1856. That sometime along about 1866 or 1867, Sam Houston and Elizabeth Houston separated; Sam Houston keeping the custody of Eliza Lauderdale and living with her at the home of people by the name of Gardner. That Elizabeth Houston, the wife, after the separation, took a younger child, the issue of said marriage by Houston, and moved from Caddo to near the town of Atoka in what is now Atoka county. That the younger child died shortly thereafter, and Sam Houston died within a year or two after the separation, and Elizabeth Houston married Francis Webster and continued to live in what is now Atoka county. That after the death of Sam Houston, Eliza Lauderdale continued to live in the home of the Gardners.

The defendants produced as a witness William Riddle, who claimed to be a grandson of the Gardners who reared Eliza Lauderdale and lived in the same vicinity when a boy, and being a couple of years older than plaintiff, and he corroborated the evidence that Eliza Lauderdale was the daughter of Sam Houston, and testified that he understood that she was an orphan. The witness testified as follows:

"A. Well, my understanding, my grandmother said she was an orphan girl; that is, she had a father, but I supposed her mother was dead. I don't know, I was informed she was an orphan girl."

The witness testified that he then lived at Wynnewood and had not seen the plaintiff for some 40 years. Being asked the names of the children of the Gardners, he named four or five and upon cross-examination admitted there were four or five more that he had forgotten. The witness further testified that it was generally reported in the neighborhood that Eliza was an orphan girl. His testimony discloses that Eliza's father died when she was about eight or ten years old. He does not pretend to know who her mother was, but supposed she was dead. After testifying as stated above, the plaintiffs in error offered to prove that the witness had heard his grandmother and his uncle, Green Gardner, upon several occasions say the plaintiff's mother was dead, and that she was an orphan. This offer was objected to as being hearsay, incompetent, irrelevant, and immaterial, and the objection thereto was sustained by the court. This ruling of the court is assigned as error and urged along with the first assignment of error.

The general rule regarding hearsay testimony to establish relation of parties, is stated in vol. 2, Jones on Evidence, 705, as follows:

"In other words, the law resorts to hearsay evidence in cases of pedigree, upon the ground of the interest in the declarations of the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore interested in the succession in question. From necessity, in cases of pedigree hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationship which existed in its different branches."

Plaintiffs in error admit that they do not come within the rule as to being related by blood or marriage, but insist that the Gardners had reared the plaintiff herein, and were her foster parents and their statements as to her pedigree would be competent, and in support of that contention cite and rely upon the case of Alston v. Alston, 114 Iowa, 29, 86 N. W. 55. In that case the question in issue was who the father of an illegitimate child was, and the evidence disclosed the purported

father of the child had made arrangements with the foster parent to rear the child and paid them for caring for the child, and under those facts the court held the statements made by them were competent although they were not of the blood or related by marriage.

Jones on Evidence, vol. 2, page 706, states as follows:

"As evidence of this description must vary by the circumstances of each case, it is difficult, if not impracticable, to deduce from the books any precise and definite rule on the subject. It is not every statement or tradition in the family that can be admitted in evidence. The tradition must be from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken."

The record discloses that the witness Riddle did not pretend to know who plaintiff's mother was, and that he had never heard who she was. Witness also testified as follows:

"A. Well, I had been informed she was an orphan. I was pretty young, at the time, and did not pay a great deal of attention."

If the statements made by the Gardners during their lifetime are to be received in evidence, it would be necessary for the record to disclose that the Gardners were acquainted with the mother of Eliza and whether they were in a position to know whether the plaintiff's mother was dead, and that they did not derive their information from hearsay testimony. We recall no testimony that the Gardners were ever acquainted with the plaintiff's mother or that they knew who the mother was, and the witness himself states that his information was very indefinite and uncertain and that he did not pay much attention to the facts for the reason that he was very young. Under those circumstances, we do not think the court committed error in sustaining the objection to the offer made by defendants.

It is next contended that the defendants introduced in evidence an affidavit of Elsie Billy made by her during her lifetime and when she was selling her land, wherein it was recited that she was the only heir of Ella Webster. We think this evidence was incompetent and of no force, for the reason the same was a self-serving declaration made by Elsie Billy during her lifetime and in her interest.

The next assignment of error is stated in the brief as follows: The court erred in rendering judgment for $2,775 as rents accrued prior to discharge of Bird E. O'Neill, administratrix of the estate of John O'Neill; said claim was never presented to the administratrix as a charge against the estate of John O'Neill, and was therefore barred by law. The question argued does not go to the amount of the judgment, but simply to the question of whether the claim was barred for the reason it was never presented to the administratrix, and whether the court erred in rendering a personal judgment, after the estate had been closed, against the heirs, who received the assets of the John O'Neill estate.

Section 6338, Revised Laws 1910, provides for the filing of claims with the administrator of the estate and contains the provision:

"If it be not then due, or if it be contingent, it may be presented within one month after it becomes due or absolute."

It is, however, contended by defendant in error that this claim was a contingent claim depending upon the outcome of this particular controversy, and therefore it was unnecessary to present the same to the administratrix until the same became absolute, nor could the same be rightfully presented until the final determination of this case, and in support of this contention she cites the case of Carrico v. Couch, 45 Okla. 672, 146 Pac. 447, wherein this court stated as follows:

"Construing sections 6338 and 6348 together, it seems that a contingent claim, such as is the claim in controversy (Southern Milwaukee Co. v. Murphy, 58 L. R. A. note 6, p. 86,) need not be presented within that time, but 'may be presented within one month after it becomes due and absolute.'"

Plaintiffs in error further contend that the administratrix was discharged in 1916, and that the heirs would not be chargeable with the rents chargeable against the estate for rents accruing before the administratrix was discharged. This contention of plaintiffs in error has likewise been decided contrary to their contention by this court in the case of Chitty v. Gillette, 46 Okla. 724, 148 Pac. 1048, wherein the court stated as follows:

"Does the fact that this estate was closed pending this litigation and that the heirs took over the entire property of the estate, both real and personal, place it beyond the jurisdiction of the district court to grant the relief prayed for by the judgment creditor, whose claim did not ripen into an enforceable liability before the estate was closed? This is a question which has not often been adjudicated, and where it has been adjudicated there is some conflict in the decisions, but the weight of authority is to the effect that where a claim has not accrued or become enforceable until after the administration of the estate is closed, a recovery may be had in an action against the heirs in the district court, to the extent of the assets received by them from the estate."

It was stipulated that the rental value of the land was $2.50 per acre per year. There is no contention by the heirs of John O'Neill that the assets of the estate of John O'Neill received by them were not sufficient to satisfy this claim against the estate. Of course they would only be liable to the extent of the value of the estate received by them, and there being no contention that the amount received by them was not sufficient to satisfy the amount due for rent while the estate was occupied by John O'Neill or the administratrix, we find no error in this portion of the judgment.

In view of the facts stated above, did the court err in directing a verdict for plaintiff? This court has announced the following rule:

"Court may direct verdict where facts undisputed or of such conclusive character that court in sound judicial discretion would be compelled to set aside verdict returned in opposition to it." Sartain v. Walker, 60 Okla. 258, 159 Pac. 1096.

Having reached the conclusion stated above, there would be no additional evidence to that introduced in the former trial to support a judgment in favor of plaintiffs in error, and this court having heretofore held that evidence insufficient, it then became the duty of the trial court to instruct the jury to return a verdict for the plaintiff; or, in other words, there was no evidence to deny the question of fact that Elsie Billy and the plaintiff, Eliza Lauderdale, were half-sisters and daughters of Elizabeth Webster, nee Houston, and that Elizabeth Webster and Elizabeth Houston were the same person.

It is next argued that, if the court committed no error in finding that Eliza Lauderdale is a half-aunt of Ella Webster and a half-sister of Elsie Billy, by virtue of section 8427, Revised Laws 1910, the allotment being an ancestral estate, and the plaintiff not being of the blood of the father of Julius Webster, therefore she should be excluded from that half of the allotment that came to Julius Webster from his father by reason of section 8427, Revised Laws 1910, which is as follows:

"Kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance."

We will first direct our attention to the allotment of Julius Webster. Upon his death it descended to his daughter, Ella Webster. The court has found that Elsie Billy and Eliza Lauderdale are related in the same degree to Ella Webster, both being aunts, one of the half-blood and the other of the whole blood, and are the next kin; if so, they inherit her property equally, unless the estate came to her by reason of inheritance, and Eliza Lauderdale is not of the blood of the ancestor from whence it came. The estate came to Ella Webster by inheritance from her father. The statute then provided that the kindred who are not of the blood of such ancestors must be excluded from the inheritance. The ancestor was Julius Webster, from whence the allotment came, and plaintiff is of the same blood as Julius Webster, being a half-sister; therefore she is entitled to inherit equally, with the full sister.

This interpretation was placed upon this statute by the Supreme Court of California, first, in the case of In re Pearson's Estate, 42 Pac. 960, and again followed in Re McKenna's Estate (Cal.) 143 Pac. 605, where the court stated as follows:

"Civ. Code, sec. 1394, providing that kindred of the half-blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, in which case those who are not of the blood of such ancestors must be excluded, had no application to real property acquired by a wife by gift from her husband, who was the father of only one of her two children, even assuming that the husband was the ancestor of the wife, since while the children were kindred of the half-blood as to each other, their mother was, as to both of them, of the whole blood."

The plaintiff and Elsie Billy, being half-sisters, but both of the same blood of Julius Webster and Ella Webster, and related in the same degree, and both full-blood members of the Choctaw Tribe of Indians, inherit the estate equally.

For the reasons stated, the judgment of the court is affirmed.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.