## MORRIS MFG. CO. v. KALES STAMPING CO.

No. 15769—Opinion Filed Sept. 15, 1925.

### 1. Contracts—Force of Letters as Creating—Question for Court.

The question of the contract as expressed in letters introduced in evidence, when such letters are clear and unambiguous, is for the court to determine.

### 2. Trial—Directed Verdict—When Justified.

The court may direct the jury to return a verdict where the facts are undisputed or are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside the verdict returned in opposition to it.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from County Court, Canadian County; W. M. Wallace, Judge.

Action by Kales Stamping Company against Morris Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. L. Fogg and J. C. Snyder, for plaintiff in error.

J. L. Trevathan, for defendant in error.

Opinion by PINKHAM, C. The defendant, in error, as plaintiff, instituted this action against the plaintiff in error, as defendant, in the county court of Canadian county. The parties will be hereinafter referred to as they appeared in the trial court.

The plaintiff alleged in its petition that about January 26, 1923, the defendant entered into a contract with plaintiff for the purchase of 5,000 steel washers, 2,500 pairs 14 gauge steel brackets and certain dies to be manufactured by plaintiff, for which defendant agreed to pay the plaintiff the sum of $446.25; that said contract consists of letters and correspondence between plaintiff and defendant, copies of which are attached to the petition. The petition further alleged that plaintiff performed all of the conditions upon its part to be performed, and that the

defendant refused to accept the articles so manufactured and furnished, and refused to pay therefor; that plaintiff was compelled to pay freight charges amounting to $11.10 and prayed judgment against defendant in the sum of $230.10.

Defendant's answer consisted of a general denial, and further alleged that because of the failure and refusal of plaintiff to make delivery of the steel brackets as plaintiff had agreed to do, defendant had been compelled to and did buy said brackets elsewhere, and notified plaintiff of the cancellation of its order. Copies of communications between plaintiff and defendant were attached to defendant's answer.

Upon these issues the cause was tried before the court and jury, and at the close of the trial, upon the motion of plaintiff the court instructed the jury to return a verdict for the plaintiff in the sum of $205.16. Judgment was rendered in accordance with the verdict. Motion for a new trial was overruled, exceptions saved, and the defendant has duly appealed.

The only proposition presented by defendant in its brief is whether the action of the trial court in sustaining the motion of plaintiff at the close of all the evidence for a directed verdict is supported by the evidence. It is admitted by both parties that the contract involved herein consisted of the various letters, copies of which were attached to the petition of plaintiff and the answer of the defendant. An examination of these communications between the plaintiff and defendant discloses that on September 29, 1922, the plaintiff acknowledged the receipt of the defendant's request for a quotation of prices upon the articles referred to in plaintiff's petition. In the letter of the plaintiff, in answer to the communication of the defendant, requesting quotation of prices, dated September 20, 1922, the price of the steel brackets is stated as $44 in quantities of 5,000 pieces; dies, or tools, $175. Under the head of "Remarks" on the quotation sheet appears the following: "Delivery two weeks of washers; 2-4 of brackets." The letter also contains the following:

"We acknowledge with thanks receipt of your request for quotation and are pleased to quote you, subject to conditions printed on the back of this sheet and made a part of this quotation. * * *"

One of the conditions printed on the back of said quotation sheet is as follows:

"2—Deliveries. Deliveries promised are based upon our best judgment, but are necessarily contingent upon receipt of raw materials, other causes beyond our control, and upon prior sale of available capacity. We reserve the usual right to over or under ship * * *"

Another condition stated in said letter reads as follows:

"7—Delay in Deliveries on Purchaser's Account. If, at any time, any cancellation change is specified or change in the part itself is requested by the customer, the expense of such charge, if there be any, will be billed to the customer as an additional charge."

On January 8, 1923, the defendant, in response to the plaintiff's letter quoting prices requested by the defendant, wrote the plaintiff to enter its order to be forwarded by Rock Island freight for 5,000 steel washers and 2,500 pairs (right and left) 14 gauge steel brackets "all above to samples submitted." On January 20, 1923, the defendant wrote the plaintiff the following letter:

"We have your acknowledgment of our order, No. 19955, and in view of the fact that we considered your quotation of $44 for 5,000 pairs instead of 5,000 pieces, we will thank you to cancel our order immediately if possible to do so, as we can buy them much cheaper elsewhere."

In answer to this communication of the defendant, the plaintiff wrote a letter to the defendant stating therein that the die-work was 60 per cent. completed, and it would be necessary to bill the defendant for the work done to that date. This letter further states that:

"If you desire a cancellation to take effect cost of die-work which is completed to date is $104."

This letter further stated that the washers were shipped January 9th, and they were unable to enter cancellation for them. In answer to this letter defendant wrote the plaintiff on January 26, 1923, that it regretted that their letter had not reached plaintiff in time to cancel order, and further states:

"Under all the circumstances, we assume that the only thing we can do is to take our medicine and we will, therefore thank you to complete the dies in question at the very earliest possible date and get 200 pairs of these handle brackets on the road to us by express as quickly as possible. We assume that inasmuch as you are charging us $175 for these dies, it will be understood that they are our property and will be held by you subject to our order. Please rush

this shipment to us just as much as you possibly can. * * *"

Plaintiff replied to this letter on February 2, 1923, as follows:

"This will acknowledge receipt of your favor of January 26th and in accordance with your request we have reinstated your order for production."

On February 12, 1923, the defendant sent a telegram to plaintiff asking when they could depend on express shipment of 200 brackets, to which the plaintiff replied on the next day: "We expect to have a sample ready for your approval on Saturday, February 17." On March 14 defendant wrote a letter to the effect that its order was given to plaintiff with the distinct understanding that the plaintiff was to deliver the brackets within two or four weeks; that the plaintiff had failed to deliver them; and concluded the letter by canceling the entire order.

There is no dispute in the evidence and the only conflict between the parties is as to the meaning of the contract and the legal effect of what was done and said by them. The construction of the contract as expressed in the letters introduced in evidence being, as we conclude, clear and unambiguous, it was the duty of the court to construe the same.

"When a letter is introduced in evidence as constituting a promise or agreement generally, it is the duty of the court to construe the terms of the letter and not to submit the same to the jury for their construction." Comanche Mer. Co. v. Wheeler, 55 Okla. 328, 155 Pac. 583.

The contract between these parties was a contract to manufacture certain definite articles and is to be construed in the light of the circumstances surrounding the transaction.

In 25 R. C. L. 1371, it is said:

"But a manufacturer who agreed to manufacture and deliver an article 'as soon as possible,' is not required to put aside all other work under way in order to take in hand the manufacture of the articles in question; in such a case the buyer is to be considered as having knowledge that the manufacturer or tradesman may have other orders on hand and under way, and the contract is to be construed in the light of such circumstances."

In the case of Childs & Co. v. Omaha Paraphernalia House (Neb.) 114 N. W. 941, it is said in the opinion:

"We do not think that an order sent to a manufacturing company to manufacture a special article 'as soon as possible' means 'immediately,' or that the company must stop all its other work and devote itself to that particular order."

It will be observed from the correspondence between the parties that the delay in delivery arose in the first instance because the defendant canceled his order after some of the articles ordered had been shipped and the die partially completed; that the plaintiff then stopped further work on the order and so notified the defendant; that later the defendant requested a reinstatement of his order, and also requested a delivery of the steel brackets as soon as possible. The order was reinstated, and it is clear from the evidence that delivery was made as soon as possible, and that prior to the second cancellation, the 200 brackets had been shipped to the defendant, and the die which the defendant had ordered was completed and the washers delivered and paid for by the defendant.

Under the state of facts disclosed by the record, the trial court rendered a judgment for the die in the sum of the contract price of $175; for the 200 brackets, which had been delivered to the express company prior to the last cancellation of the order, in the sum of $19.06; and for the express charges, which plaintiff had been obliged to pay on account of defendant's refusal to accept the 200 steel brackets, in the sum of $11.10.

As before stated, by the terms of the contract the die was to be kept in the possession of plaintiff to be used in filling further orders of the defendant.

The court may direct a verdict where facts are undisputed, or are of such conclusive character that the court in its sound judicial discretion would be compelled to set aside a verdict returned in opposition to it. O'Neill v. Lauderdale, 80 Okla. 170, 159 Pac. 121.

We think the court properly directed a verdict for the plaintiff, and that the judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 784, § 996. (2) 38 Cyc. p. 1571.