BOARD OF COUNTY COM'RS OF TULSA COUNTY v. STOKES.

No. 35001. JuJy 29, 1952.

*247 P. 2d 526.*

Lewis J. Bicking, Co. Atty., and Hugh Webster, Asst. Co. Atty., Tulsa, for plaintiff in error.

Bradford J. Williams, Fenelon C. Boesche, R. B. McDermott, and T. Hillas Eskridge, Tulsa, for defendant in error.

JOHNSON, J. This is an action wherein a writ of mandamus was granted by the district court of Tulsa county, Oklahoma, to compel allowance and payment of the salary of an elected official.

The essential facts are that Andy Stokes was elected county clerk of Tulsa county, Oklahoma, for a two year term at the November general election of 1948. He qualified and assumed the duties of the office on January 3, 1949, and his term expired on the first Monday in January, 1951.

The salary of Stokes at the time of the election was governed by the provisions of sections 180.1 and 180.42 (Laws 1943, p. 40, §1) (Laws 1947, p. 207, §1), Title 19 O. S. Supp. 1947. The first section provided that the salaries of county officers shall be based upon the population and net valuation (total assessed valuation, not including intangible personal property, less homestead exemptions approved) of the respective counties of the state, classified by groups as shown by the decennial Federal Census of 1940 and the net assessed valuation as certified to the county excise board in 1942 and as may be shown by any succeeding decennial Federal Census and any succeeding biennial net assessed valuation.

The valuation and population of Tulsa county brought the salary of the county clerk within the provisions of section 180.42, Title 19 O.S. Supp. 1947, supra, which provided that the county clerk's salary should be $4,000 per year, payable monthly.

It is conceded by Stokes that the salary bracket under section 180.42, supra, was applicable to salary of the county clerk until the 1950 Federal census was officially announced on June 28, 1950; but he claims that after that date, by reason of the increase of population of Tulsa county, the clerk's salary was payable according to the provisions of section 180.42b of Title 19 O.S. Supp. 1947, Session Laws of Oklahoma 1947, p. 194, §1, which was in force and effective as of the date of the election.

The pertinent part of this section provides:

"In counties having a population in excess of Two Hundred Thousand (200,-000) that the salary of officers . . . shall be as follows:

" * * * * *

"(b) The County Clerk shall receive the sum of Six Thousand Dollars ($6000.00) per year, payable monthly . . ."

Numerous questions are raised by appellant, but the matter of paramount importance here is to ascertain what compensation was fixed or prescribed by law when the term of office of the appellee commenced.

We are committed to the rule that an increase (or decrease) in salary brought about solely because of a change in the population or assessed valuation does not violate any constitutional inhibitions. See Oklahoma cases in annotation, 139 A.L.R. 742.

In Bass v. Lincoln County, 97 Okla. 94, 222 P. 995, cited with approval in Drolte v. Board of County Com'rs of Ellis County, 176 Okla. 622, 56 P. 2d 800, therein (Lincoln County Case) we held that if an increase in salary results from an increase in population after the election of an officer in accordance with a statute enacted prior to the officer's election, the increased salary results by operation of a law enacted prior to the election even though the increase in population is indicated by a census taken after the election and during the term of office. We can see no reason to not apply the same rule here unless, as is contended by appellant, the act (section 180.42b, O.S. Supp. 1947) was repealed by the uniform salary act of 1949 (sections 179.1 to 179.11 of Title 19, O.S. Supp. 1949), or was unconstitutional.

We think the salary rights of Stokes who was elected county clerk in 1948 for a two year term beginning January 3, 1949, are determined by 1947 Laws in effect at the time of his election, so as to render salary changes effected by 1949 Laws inapplicable in determining such rights. This rule was applied in Hamilton v. Foster et al. (Neb.) 50 N.W. 2d 542, where it was held under similar statutory and constitutional provisions that the salary rights of a county judge, elected in 1948 for a four year term beginning January 6, 1949, are determined by 1947 Laws in effect at the time of the election so as to render salary changes effected by 1949 Laws inapplicable in determining such rights. See Neb. R. S. 1943, secs. 23-1101, 23-1104, 23-1105, as amended by Laws 1947, c. 62, sec. 4, p. 199, and c. 70 secs. 3 & 4, pp 223, 224; Laws 1949, c. 40, p. 134; Neb. Const., art. 3, sec. 19.

Appellee claims increased salary only from July 1, 1950 (the effective date of 1950 decennial Federal Census which showed the population of Tulsa county to be in excess of 200,000, until the expiration of his term, under the provisions of section 180.42b, Title 19 O.S. Supp. 1947, supra. This statute made no reference to any decennial Federal Census, but was applicable to all counties having a population in excess of 200,000; and provided that county clerks in all such counties shall be paid $6,000 per year, payable monthly. We think the additional amount of work in offices in counties of such large population constitutes a good reason and is a reasonable basis for creating larger salaries than is provided for counties of smaller population. When a comparison is made as to salaries paid in other counties coming within the lower population brackets we find nothing to indicate to us that such a classification is arbitrary or unjust; and, as a general law, it operates uniformly throughout the state and is not violative of the provisions of Okla. Const. art. 5, sec. 59. Board of County Com'rs of Okla-homa County v. Beaty, 67 Okla. 281, 171 P. 34.

In the Beaty Case, supra, we approved and quoted the language of 1 Dill. on Municipal Corp. (5th Ed.) sec. 170, which provides:

"Under a prohibition of special legislation which embraces counties within its operation, a classification of counties is permissible, and a statute which applies to all counties of a legitimate class is a general and not a local law. Therefore counties may be divided into classes according to population for the purpose of assessing property for taxation; or for the purpose of regulating the compensation of county officers. and in other matters relating to the organization and government of counties where population furnishes a reasonable basis for discrimination. But a statute which excepts from the operation of the general laws one or more counties a rule of law which is not applicable to the others, when no good reason exists why all should not be subject to the same rule, is local and special, and is invalid under the constitutional prohibition."

For reasons herein stated the judgment of the trial court is affirmed.

ARNOLD, C.J., HALLEY, V.C.J., and CORN and O'NEAL, JJ., concur. WELCH, GIBSON, DAVISON, and BINGAMAN, JJ., dissent.

BINGAMAN, J. (dissenting). The majority opinion will result in changing the salaries of several county officers in 49 counties in the state. In 29 of these counties the salaries will be reduced, while being raised in the other 20. The far-reaching effect, therefore, of the decision requires that I express my dissenting views.

Section 10, art. 23 of the Oklahoma Constitution provides:

"Except wherein otherwise provided in this constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law en-

acted prior to such election or appointment * * *."

The salary of the defendant in error, under the provisions of 19 O.S. Supp. 1947, §§180.42 and 180.42b, was at the time of his election and also at the commencement of his term of office $4,000 per year. There was also in force at the time of such election 19 O.S. Supp. 1947 §180.1, which provided the salary might be changed upon the contingency of a change in classification of the county if a change in population occurred as shown by "any succeeding decennial Federal Census."

The validity of such a statute to take effect upon a contingency is recognized by the authorities assembled in 50 Am. Jur., Statutes, par. 497, and 11 Am. Jur., Constitutional Law, par. 216. The same rule is recognized in 16 C.J.S., Constitutional Law, § 141, and as there stated:

"Such a statute lies dormant until called into active force by the existence of the conditions on which it is intended to operate."

The validity of such a statute to take effect upon contingency was recognized by this court in Drolte v. Board of County Commissioners, 176 Okla. 622, 56 P. 2d 800, and we there held that after the occurrence of such a contingency the salary was fixed thereby.

Prior to the taking of the census of 1950 the Legislature, by 19 O.S. 1949, §179.9, repealed the provisions of sec. 180.1 providing for such contingency and left the classification and salaries in accordance with the census of 1940.

I find nothing in this statute repealing the contingency provision of the earlier act which conflicts with sec. 10, art. 23 of the Oklahoma Constitution. Such statute does not change the salary but simply repeals a contingency provision of an earlier statute which might have changed the salary if and when it became effective by the occurrence of the contingency.

This court is committed to the rule that every act of the Legislature is presumed to be valid unless clearly in conflict with the Constitution. State ex rel. Hudson v. Carter, 167 Okla. 32, 27 P. 2d 617. I find no conflict between the Constitution and the legislative enactment repealing the contingency provisions of the earlier law, and respectfully dissent from the majority opinion holding 19 O.S. Supp. 1949 §179.9 to be unconstitutional.