** Summary **
DETERMINATION OF SALARY OF DISTRICT ATTORNEY Because of the prohibition in Okla. Const. Article XXIII, Section 10 against changing the salaries of public officials during the terms of their office, District Attorneys in Districts 1, 10, 13, 16, 18, 19, 25, and 26 are not entitled to receive salary increases by virtue of the enactment in June, 1971, of an amendment to 74 O.S. 1971 295 [74-295], where it is provided by 19 O.S. 215.14 [19-215.14] (1971) that District Attorneys in these districts shall receive a salary equal to that of the highest paid Associate District Judge in his district. The Attorney General has considered your request for a construction of ArticleXXIII, Section 10 of the Oklahoma Constitution as it affects certain recent statutory changes relating to the salary of District Attorneys. The Oklahoma Legislature in 1970 enacted an amendment to 19 O.S. 215.14 [19-215.14] (1971), which provides in pertinent part: "Each District Attorney shall receive an annual salary in an amount equal to the highest paid Associate District Judge of his district, except that a District Attorney from any district containing a population in excess of fifty thousand (50,000) persons but less than a population of one hundred thousand (100,000) persons shall receive a salary of Fifteen Thousand Five Hundred Dollars ($15,500.00) per annum payable monthly. . . ." Section 215.14 goes on to provide for annual salaries of $17,500 for District Attorneys whose districts contain 100,000 to 300,000 population and an annual salary of $19,500 for District Attorneys whose districts have a population of more than 300,000 according to the most recent Federal Decennial Census. Other provisions of 19 O.S. 215.14 [19-215.14] (1971) not pertinent here regulate the salaries of Assistant District Attorneys and provide for voluntary participation in the State Retirement System. The results of the 1970 Federal Decennial Census reveal that there are eight District Attorney districts in Oklahoma having a population of less than 50,000. The District Attorneys in Districts 1, 10, 13, 16, 18, 19, 25, and 26 are therefore governed by the provisions of Section 215.14 that they shall receive an annual salary "in an amount equal to the highest paid Associate District Judge of his district." In 1971, the Oklahoma Legislature adopted a measure increasing the salaries of Associate District Judges. Title 74 O.S. 295 [74-295] (1971) provides in pertinent part that: "The annual salary of each Associate District Judge in counties under three hundred thousand (300,000) population, according to the latest Federal Decennial Census, shall be as follows: in counties of less than ten thousand (10,000) population, a salary of not less than Thirteen Thousand Five Hundred Dollars ($13,500.00) nor more than Fourteen Thousand Five Hundred Dollars ($14,500.00); in counties of ten thousand (10,000) to three hundred thousand (300,000) population, a salary of Fifteen Thousand Five Hundred Dollars ($15,500.00) per year; and all salaries shall be payable monthly by the State." Each of the eight District Attorney districts mentioned above contain at least one county having a population in excess of 10,000; therefore, the highest paid Associate District Judge in each of these districts now receives a salary of $15,500 per annum, according to 74 O.S. 295 [74-295] (1971). The questions to be considered are as follows: 1. Does 19 O.S. 215.14 [19-215.14] (1971) violate the prohibition of Okla. Const., Article XXIII, Section 10 against the changing of the salary of public officials during the term of office? 2. What are the determining factors which establish the salary of District Attorneys in District Attorney districts having a population of less than 50,000 according to the most recent Federal Decennial Census? The Oklahoma Constitution provides in Section 10 of Article 23: "Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment." The above quoted constitutional provision contains a broad prohibition against any change in the salary of public officials in the State of Oklahoma designed to prevent any attempt by a public official or a legislator to use the influence of his office to affect official actions for which he is not responsible. On the one hand, public officers whose salaries are determined as of the time of taking office are protected from threats of retaliatory reductions in salary; on the other hand, legislators may not be coerced into increasing the salaries of public officials during the terms for which they were elected. In determining the validity of 19 O.S. 215.14 [19-215.14] (1971) under the above quoted prohibition against changes in salary, the sequence of relevant events must be noted. As noted above, Okla. Const. Article XXIII, Section 10 provides that "except wherein otherwise provided in this Constitution," salaries shall not be changed. The judiciary of Oklahoma is no longer subject to Section 10 of Article 23. The provisions of Okla. Const. Article VII, Section 11(a) were adopted by the people in an election held July 11, 1967. Section 11(a), effective January 13, 1969, provides in part that: "The salaries of Judges and Justices shall not be diminished, but may be increased during their respective terms of office." Thus, in 1969, the Oklahoma Legislature acquired power to increase the salaries of Associate District Judges during the term of their office. The next significant event was the enactment in 1970 of 19 O.S. 215.14 [19-215.14] (1970), which tied the minimum salary of District Attorneys to the salary of the highest paid Associate District Judge in the District. At that time, 74 O.S. 295 [74-295] (1970) provided that Associate District Judges in counties of 10,000 to 300,000 population should receive an annual salary of $14,500. Accordingly, when the District Attorneys in the eight District Attorney districts enumerated above took office on January 4, 1971, they were entitled to receive an annual salary of $14,500, a salary equivalent to that of the highest paid Associate District Judge of the District. On June 1, 1971, Mr. Don Roberts was appointed to fill a vacancy in the office of District Attorney in District 18. Mr. Roberts was also entitled to receive a salary of $14,500 per annum under statutes in effect at the time of his appointment. On June 25, 1971, an act amending 74 O.S. 295 [74-295] (1971) by increasing the salaries of the highest paid Associate District Judges in each of the District Attorney districts enumerated above to $15,500 was approved. The act was adopted as an emergency measure and became operative on July 1, 1971. 1971 Okla. Sess. Laws, ch. 327, 6-7. The relevant provisions of 74 O.S. 295 [74-295] (1971) are quoted above. All District Attorneys in the eight District Attorney districts having a population of less than 50,000 were in office prior to the enactment and operative date of the amendment to 74 O.S. 295 [74-295] (1971). Because the salaries of District Attorneys in the eight affected District Attorney districts are tied to the salaries of the highest paid Associate District Judge in each district, and because the salary of the highest paid Associate District Judge was increased in 1971, it is asserted that the salaries of District Attorneys in these districts should also be increased by $1,000 to an annual salary of $15,500. This salary increase is sought to be justified on the basis that it is an increase by operation of a law passed prior to the election or appointment of the District Attorneys in question. Section 10 of Article23 of the Oklahoma Constitution provides in pertinent part that: "In no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment. " (Emphasis added) Unfortunately, the asserted salary increase comes directly within the prohibition against changing salaries during the term of office. The asserted increase does not result solely from the operation of a law enacted prior to the election or appointment of the District Attorneys affected. Indeed, the whole basis for the claim is a law enacted on June 25, 1971, after the term of office had begun. Such an increase is prohibited by the Oklahoma Constitution. Accordingly, the present District Attorneys in Districts 1, 10, 13, 16, 18, 19, 25, and 26 are entitled to receive an annual salary in the amount of $14,500. Only those statutory provisions in existence at the time of the election or appointment of the District Attorneys in question may be considered in determining the salary of those officers. If the office of District Attorney in any of the above enumerated districts becomes vacant prior to the end of the term, the person appointed District Attorney is entitled to be paid an annual salary determined by the law in existence at the time he takes office. Under current law, such an appointee would be entitled to receive an annual salary of $15,500. Assuming no statutory change occurs prior to the end of the current term, District Attorneys in the districts enumerated above will be entitled to receive an annual salary of $15,500 beginning on the first Monday in January, 1975. 19 O.S. 215.20 [19-215.20] (1971). Section 10 of Article 23 of the Oklahoma Constitution has been construed in numerous Oklahoma cases. A brief discussion of a few cases construing the proviso that a salary increase may take effect if it results by operation of law enacted prior to the election or appointment of the officer in question is appropriate. Perhaps the leading Oklahoma case is Board of Commissioners of Tulsa County v. Stokes, 207 Okl. 37,247 P.2d 526 (1952) Syllabus one of the court's opinion in that case states that: "The salary rights of a county clerk, elected in 1948 for a two year term beginning January 3, 1949, are determined by 1947 Laws in effect at the time of the election so as to render salary changes effected by 1949 Laws inapplicable in determining such rights." In Stokes, plaintiff was elected county clerk for a term of two years beginning January 3, 1949, and was paid a salary of $4,000 per year because under the 1940 Federal Decennial Census, Tulsa County contained a population of under 200,000. On July 1, 1950, approximately six months before the end of plaintiff's term of office, the 1950 Federal Decennial Census proclamation was effective, and Tulsa County officially had over 200,000 population. The salary statute for County Clerks in effect in 1947 provided that County Clerks of counties having a population of over 200,000 should be paid an annual salary of $6,000. However, in 1949, this salary schedule had been repealed. The Court held that in spite of the 1949 repeal, plaintiff was entitled to be paid at the rate of $6,000 per annum from July 1, 1950, until the end of his term. Only those salary laws in effect at the time of plaintiff's election could be considered in determining his salary. The 1949 repeal of those laws was held ineffective as to the 1949-51 term. We must infer from Board of Commissioners of Tulsa County v. Stokes that any statutory change relating to the salary of a public officer, including a repeal of those statutory salary provisions, must be disregarded until the end of the term for which the officer was elected or appointed. The Court in the Stokes case relied on previous Oklahoma cases holding that an increase or decrease in salary brought about solely because of a change in the population or assessed valuation of a county does not violate any constitutional provisions. Typical of such holdings is Board of Commissioners of Coal County v. Mathews,147 Okl. 296, 296 P. 481 (1931). In the Mathews case, the Court Clerk of Coal County fell into a lower salary classification under statutes in effect at the time of his election as a result of the 1930 Federal Decennial Census. His salary was decreased from $166.66 per month to $112.50 per month. It was held that the decrease would be allowed in spite of the Court Clerk's objection that under Okla. Const. Article XXIII, Section 10, his salary should not be changed. The decrease was held to be "by operation of law enacted prior to such election or appointment" under Section 10 of Article 23. The Court stated at 296 P. 483
that: "When defendant in error accepted his office as Court Clerk in January, 1929, he could with assurance say that his salary, during the term then beginning, could not be changed by any law enacted after his election, but with equal certainty he could say that, by operation of the last statute quoted, his salary, at some time in the year 1930, might be increased or diminished, dependent upon the fifteenth census enumeration of Coal County." (Emphasis added) The case of Board of Commissioners of Delaware County v. Williams, 38 Okl. 738, 135 P. 420 (1913) is in accord. In that case, an increase in the salary of a County Treasurer was allowed during the term of his office. As a result of a special census of 1908, the Treasurer fell into a higher salary classification under statutes in effect at the time of his election in 1907. After quoting from Okla. Const. Article XXIII, Section10, the Court stated at 135 P. 422 that: "The foregoing provisions of the Constitution, prohibiting a change of salary of an officer during his term of office, does not require that the salary of an officer shall be uniform throughout his term. It requires only that there shall be no difference in his salary during the different parts of his term, except such as results from the operation of a law enacted prior to his election or appointment." Under the Stokes, Mathews and Williams cases, the element of foreseeability of a salary change is significant. No law enacted after the election of the public official in question will have any effect on his salary for the current term of office unless it significantly increases his duties of office. Breeden v. Nigh, Okl., 441 P.2d 981
(1968); Phelps v. Childers, 184 Okl 421, 89 P.2d 782
(1939). The public official is thus assured at the time of his election that his salary will not be changed except by operation of statutes which are in effect at the time of the election and of which he has notice. See also Drolte v. Board of Commissioners of Ellis County, 176 Okl. 622,56 P.2d 800 (1936). The case of Bass v. Board of Commissioners of Lincoln County, 97 Okl. 94, 222 P. 995
(1924) was decided on facts very similar to those on which your current question is based. Bass was elected in November, 1918 to the office of County Superintendent of Public Instruction. Under the statute in effect at the time of his election, Bass' salary was $1,600 per annum. After Bass' election and before he took office in July, 1919, the Legislature passed a statute tying the County School Superintendents' salaries to those of County Clerks as follows: "The County Superintendent of Public Instruction in each and every county in the State, shall receive an annual salary the same as that of the County Clerk in the same county. . . ." Under statutes which had been in effect since 1911, the County Clerk of Lincoln County received a salary in excess of $1,600 per year. It was held that Bass was not entitled to a salary equal to that of the County Clerk under the 1919 act, even though the County Clerk's salary statute was passed prior to Bass' election. The Court stated at 222 P. 996 that: "Plaintiff in this case is seeking to claim the benefit of a legislative act passed after his election, increasing the basis for calculating his salary on the population of the county. The plaintiff cannot claim the benefits of the legislative act of 1919 changing the basis for computation according to the population of the county, as it could not be said that the salary was the result of a legislative enactment prior to his election. We are of the opinion that the 1913 Session Laws fixed the salary for plaintiff during his term of office commencing on the first Monday in July, 1919." (Emphasis added) Under Okla. Const. Article XXIII, Section 10, the Oklahoma Legislature is under a disability to pass any law which directly or indirectly affects the salary of public officials during the current term of office. It has been stated that such a constitutional prohibition is inexorable, and may not be avoided by indirection. The constitutional prohibition against changing salaries during the term of office has been applied in a number of Oklahoma cases to invalidate attempted salary changes. E.g., Board of Commissioners of Beaver County v. Culwell, 41 Okl. 712, 139 P. 979 (1914); Carrico v. Couch, 45 Okl. 672, 146 P. 447 (1915); Privett v. Board of Commissioners of Grant County, 44 Okl. 523,145 P. 323 (1915); Turner v. Ramsey, 63 Okl. 199,163 P. 712 (1917). Recent cases in other states construing similar constitutional prohibitions are in accord. E.g., Brissenden v. Howlett, Ill., 195 N.E.2d 625 (1964); Shubat v. State, Mont., 484 P.2d 278 (1971); Goodwin v. Allegheny County, 182 Pa. Super. 28, 125 A.2d 640 (1956); Sellers v. School District of Upper Moreland, 385 Pa. 278,122 A.2d 800 (1956); State ex rel Ross v. Fleming, Tenn.,364 S.W.2d 892 (1963). See also Annot., 139 A.L.R. 737 (1942). Therefore, it is the opinion of the Attorney General that your first question should be answered in the affirmative. Title 19 O.S. 215.4 [19-215.4] (1970) and 74 O.S. 295 [74-295] (1971), when considered together, violate the prohibition of Okla. Const. Article XXIII, Section 10 against the changing of the salaries of public officials during the terms of their office. In answer to your second question, the following rules are applicable. Only those statutes enacted prior to the election or appointment of District Attorneys in Districts 1, 10, 13, 16, 18, 19, 25, and 26 may be considered in determining their salaries. District Attorneys in these districts are now entitled to receive a salary of $14,500 per annum under 19 O.S. 215.14 [19-215.14] (1970) and 74 O.S. 295 [74-295] (1970). If a vacancy occurs in the office of District Attorney in any of the districts enumerated above, under current law an appointee who fills the vacancy will be entitled to receive an annual salary of $15,500 under 19 O.S. 215.14 [19-215.14] and 74 O.S. 295 [74-295]. Carter v. State, 77 Okl. 31, 186 P. 464 (1920). Assuming no further statutory changes, District Attorneys in all eight districts enumerated above will be entitled to receive an annual salary of $15,500 beginning on the first Monday of January, 1975. (Charles L. Pain) ** SEE: OPINION NO. 72-227 (1972) **