H. C. WATSON ET AL. V. JOSEPH H. INMAN, ADMINISTRATOR.

The obligee cannot, after a delay of eighteen years, if it were his duty to take the initiative, maintain a suit, on a contract which entitled him to 640 acres of land, to be selected out of one of two tracts, or at his option, to $640 with interest.

If it were the duty of the obligor, to have given notice to the obligee, of the location of the land, before the latter was required to act, and he failed to do so within a reasonable time, the obligee's demand became a moneyed one, and suit should have been commenced within four years after that time.

That a patent had not been issued, though the survey had been made, and the field-notes long before returned to the General Land Office; and that the scrip, by which the other tract was to be located, from which the obligee was entitled to make his selection, had not been located; do not furnish an excuse to the obligee, for a delay of eighteen years, in the assertion of his rights under the contract.

ERROR from Houston. Tried below before the Hon. John H. Reagan.

This was a suit by the plaintiffs in error, as heirs of Robert G. Watson, deceased, against the defendant in error, as the administrator of George G. Alford, on the following contract, to wit:

"Memorandum of an agreement made this 23d day of October, in the year 1838, between George G. Alford of the county of Nacogdoches, in the Republic of Texas, and Robert G. Watson, of the county of New Madrid, in the State of Missouri, as follows: The said Alford has this day received of the said Watson, his two several notes of hand; one for the sum of $500, the other for the sum of $140, made payable on the 23d day of July, 1839. Now, in consideration of the said notes of hand, which said Alford acknowledges to have received of said Watson, the said Alford sells, transfers, and sets over to said Watson, one Texas land scrip, No. 355, dated 17th day of August, 1836, issued to, and in the name of said Alford, for 640 acres of land; and should said Watson not be pleased and

satisfied with the land when located, then said Watson has the
right to take in lieu of said land scrip, 640 acres of land out of a
tract of one-third of a league, now located on the river Trinity—
which third of a league was purchased by said Alford, from George
Allen, of Nacogdoches county—which tract of land last men-
tioned, will be more fully known, as being located under an
order of survey, from the board of land commissioners of Nacog-
doches county, dated 21st day of February, 1838, and being
numbered 338. It is also agreed, that if said Watson thinks
proper to take the said land scrip first mentioned, that said
Alford is to defray all the expenses in locating the same, and
to use his endeavors to have the same located on first-rate land,
and on or near a navigable stream, or water-course; and it is
further agreed, that after said Watson has viewed said lands,
should he not be satisfied with one or the other of said tracts,
then said Alford is to pay to the said Watson, in current bank-
notes of the United States, the amount of said notes, together
with ten per cent. interest on the same. As witness our hands
and seals, this day and date first above written.

   "Witness present,               " G. G. ALFORD. [seal.]"
   " A. SMITH."

The petition was filed February 21st, 1857, and alleged that
the said Alford, without having performed his covenants, as
contained in the said instrument, departed this life on the 1st
of April, 1847, and that administration was granted to the de-
fendant upon his estate, on the ——— day of ———, 1847; that on
the 1st of September, the said Robert G. Watson, then in life,
made and attached to the said instrument, an affidavit that the
same was a just claim against the estate of the said Alford, as re-
quired by the statute; and that on the 20th of February, 1857, he
presented the same to the defendant for his approval of it, as a
claim against the said estate, which was refused. It was also
alleged, that the defendant and his intestate, had failed and re-
fused to locate the said scrip; and that the defendant had, as
was averred in an amended petition, fraudulently sold the same;

and had also failed to perfect the title to the third of a league mentioned in the contract; though, as it also appeared from the amended petition, the field-notes of this survey, had long been returned to the General Land Office, and all that was required to a complete title, was the payment of fees, and issuing of a patent. It was also averred, that the defendant and the said Alford, in his life-time, had failed and neglected to submit to the plaintiffs, or their ancestor, in his life-time, the said two tracts of land, or either of them, for his or their election, and had failed to pay the said sum of money, &c. It was further charged, that although the said instrument had been frequently presented to the defendant, from a short time after he qualified as administrator, yet no steps had been taken to enforce it, because, in the life-time of the said Alford, of the revolutionary and unsettled state of affairs in Texas; and when placed in the hands of an attorney, he was induced to delay for want of a knowledge, whether the said scrip had been located, or not, and whether the defendant could, or would, perfect the title to the said third of a league, as he promised the said attorney he would do; and that he would submit to the said Robert G. Watson, the selection between the several alternatives specified in the instrument. The plaintiffs then prayed, that the defendant might be required to disclose, what had become of the said scrip; whether it was located, and if so, where, and for whom; and whether he had perfected the title to the said third of a league? and if the scrip was located, and the title for the same, and the third of a league, were in the said Alford's estate, that the defendant might be decreed to comply specifically with the said agreement, by submitting the said two tracts of land to the plaintiffs, for their selection between them and the said money; and if this could not be done, they prayed for judgment, for the amount of the said notes and interest, as damages.

On the 30th of March, 1858, the plaintiffs amended their petition, and alleged that the said estate had not the title to the said third of a league, and had sold the said scrip; they set forth, substantially, the same grounds as in the original petition, for

the delay in the prosecution of the suit; alleged that the said contract had been duly presented to the administrator as a moneyed demand against the said estate; and prayed judgment for $640, and interest thereon, &c.

On the 8th day of March, 1858, plaintiffs filed a second amended petition, the material portions of which will sufficiently appear from the opinion.

The defendants excepted to the original and amended petitions, upon the ground that the cause of action disclosed therein was a stale demand, and was barred by the statute of limitations. These exceptions were sustained by the court, and the plaintiffs declining further to amend their petition, it was dismissed, and judgment given for the defendant; from which plaintiffs prosecute their writ of error.

*S. A. Miller*, for the plaintiffs in error.—The contract was, in substance, one to convey land. (Williams v. Talbot, 16 Texas Rep. 1.) It created the relation of trustee and *cestui que trust;* and the trust is believed to have been not a constructive or resulting one, but an express trust. The trust was always acknowledged by Alford, and as it existed during his life, descended to his heirs and legal representatives at his death. (Redding v. Redding, 15 Id. 249.) The entire consideration for Alford's undertakings, viz., two promissory notes, for the aggregate sum of $640, were executed at the time, and subsequently fully paid off, according to their tenor, and taken up. No obligation was left for Watson or his heirs to discharge. No subsequent act was to be done by Watson, save only to make his election between the three alternatives stipulated for by the contract; this election could not be made until the scrip was located, which was first incumbent upon the defendant, and which was never done.

In the language of this court, in Williams v. Talbot, above cited: "If there seems to have been great delay on the part of the plaintiffs, it was a delay which was unavoidable on their part, without a relinquishment of their rights under the contract."

The *laches* charged to the plaintiffs, is sufficiently explained by the petition, thus—the confidential relation subsisting between the parties; the great distance which separated them; the want of mail facilities; the troubles with Mexico and the wild Indian tribes, rendering it dangerous, and most frequently impracticable, to make locations, or surveys; and this was the case from the time of making the contract to the time of annexation; the closing of the land office, which " was not practically opened for such purposes (issuing patents) until some time in 1844;" and the continuous acknowledgment of the trust by the defendant, and his intestate, and their oft repeated promises to perfect the titles to the two tracts of land, and to submit them and the other alternative, to plaintiff's election, according to the stipulations of the contract. These causes of delay could operate no injury to the defendant, as all the duties devolving upon the plaintiff had been previously fully discharged. (See this point, and many others applicable to the case, decided in Hemming v. Zimmerschitte, 4 Texas Rep. 159.)

The following authorities are also relied upon: Dobbin, Adm'r, v. Bryan, 5 Texas Rep. 285; Mitchell v. Sheppard, 13 Id. 484; De Cordova v. Smith, 9 Id. 129; White v. Leavitt, 20 Id. 703; Hart. Dig., Art. 1010, 1108.

*William M. Taylor*, for the defendant in error.

BELL, J.—We are of opinion, that there was no error in the judgment of the court below, sustaining the exceptions to the original and amended petitions of the plaintiffs. The contract between Robert G. Watson and G. G. Alford, was entered into in the year 1838. The petition of the plaintiffs states that Alford died about the first day of April, 1847, and that administration upon his estate was granted in the year 1847. This suit was instituted in the month of February, in the year 1857. There is nothing shown in the petition which can entitle the plaintiffs, at so late a day, to call upon the court to enforce so stale a demand. In any view that can be taken of the case,

the plaintiffs do not show themselves entitled to any relief. The contract is a very peculiar one in its terms, but we are of opinion that it is susceptible of no construction, by which the plaintiffs can, at this time, maintain a suit upon it.

If it devolved upon Watson to take the initiative in carrying the contract into effect, most surely his *laches* has been such, that he cannot now be heard to complain. One of the amended petitions states, that Robert G. Watson died about the month of January, 1856. Thus it is shown, that from October, 1838, until the time of his death, in 1856, he took no measures that were of any efficacy in law, to avail himself of the stipulations of the contract.

If, on the other hand, it be contended, that it was Alford's duty to locate the land scrip, named in the agreement, and to give notice to Watson of its location, before Watson could be required to move in the matters between them, it would result from this view, that Alford was under obligation to locate the land scrip within some reasonable time, and that upon his failure to do so, Watson's demand would have become a moneyed demand against Alford.

The petition of the plaintiffs seeks, first, to establish a moneyed demand against the estate of Alford. As a moneyed demand, it may well be held to be stale, and not entitled to the favorable consideration of the court; because it ought to have been prosecuted within four years after the lapse of a reasonable time for the performance by Alford, of whatever he was bound by the contract to do. This is the most liberal view that can be taken of the claim of the plaintiffs, as a demand for money.

In the last amended petition, the plaintiffs ask, that they may have 640 acres of the third of a league of land on the Trinity river, which is named in the contract, provided they are not entitled to a judgment for the amount of money claimed. This prayer of the amended petition, is the first expression of a willingness to take any portion of the land on the Trinity river ; and this petition was not filed until the 8th day of March, 1858.

We are of opinion, that the court below did not err in considering the claim of the plaintiffs as too stale to be enforced. The petition discloses the fact; that Robert G. Watson was informed of the death of Alford, very soon after his decease, and that soon after the death of Alford, the claim of Watson was placed in the hands of an attorney, in Houston county, where the estate of Alford was being administered. There is, therefore, no excuse shown by the plaintiffs, for the long delay in the assertion of the rights of Robert G. Watson, upon the contract. The judgment of the court below is affirmed.

Judgment affirmed.