### HARMON v. NOFIRE et al.

No. 15087.   Opinion Filed May 15, 1928.

(Syllabus.)

1. **Covenants—Action Against Grantee in Warranty Deed—Nature of Statutory Notice to Grantors of Suit.**

The written notice which may be served on grantors or other persons bound by a warranty in a deed conveying land mentioned in sections 5262 to 5265, inclusive, C. O. S. 1921, is not a writ or process within the meaning of article 7, sec. 19, of the Constitution of this state, nor is it process as referred to in section 862, C. O. S. 1921.

2. **Same—Effect of Notice as Making Grantors Parties to Suit.**

Where an action is brought against a grantee to recover land conveyed to him by warranty deed, and he causes to be served on previous warrantors, in his chain of title, a written notice that such suit has been brought, and requests them to defend his title under the procedure provided for in sections 5262 to 5265, supra, such warrantors are thereby, in effect, as between them and the grantee, made parties to the action, and charged in law with notice of all subsequent proceedings in the case, and the grantee is not required to file a cross-petition over against them before judgment is entered against him in order to preserve his right to recover in the same action.

3. **Same—Recovery Against Grantee—Remaining Question of Grantors' Liability to Grantee—Retained Jurisdiction—Validity of Postponement of Hearing.**

Where a grantee has served the notice on his warrantors in accordance with the foregoing statutes of this state, notwithstanding the fact that such warrantors have failed to appear in the case, upon recovery by the plaintiff in the action, and if at the same time the case is not determined as between the grantee and the warrantors, they have notice of such fact, and that this remaining question in the case may be heard by the court at any time thereafter during the same

term. And no order postponing this phase of the case to a subsequent date is necessary for the court to retain jurisdiction of such question. However, in this case the question was eliminated by an order of the court, made at a subsequent date of the term, finding that the cause had been postponed until that date, which was in effect an order of postponement nunc pro tunc from the former date, and authorized the court at that time to hear the remaining question.

4. **Descent and Distribution — Claims Against Estate—Enforcement Against Heirs—Liability for Breach of Covenant of Warranty of Ancestor.**

Under the common law, an heir was liable upon the obligation of his ancestor upon existence of two conditions: First, that the heir be expressly named as being bound, and this rule was applicable to a warranty deed; and, secondly, that the heir should receive assets by descent sufficient to meet the demand of the obligation. However, no such rule prevails in this state, for the reason that by section 1256, C. O. S. 1921, all property of a decedent, except the homestead or certain personal property which may be set aside to the wife and minor children, is chargeable with payment of the debts of the deceased, and in legal effect impressed with a lien for the payment of these debts. There is no distinction as to the liability of an heir arising from the breach of the covenant of warranty of his ancestor and any other debt owing by such ancestor at the time of his death. The liability accrues against such heir, alone, by his receiving property charged in law with the payment of the ancestor's debts.

5. **Same—Covenants—Breach of Warranty —Necessary Proceeding for Evicted Grantee to Secure Judgment Against Heirs of Deceased Grantor.**

Sections 5262 to 5265, C. O. S. 1921, inclusive, provide a special procedure for recovery by warrantees against their grantors or other persons bound to them by warranties. An heir of a deceased person is not bound by the warranty of his ancestor with-

in the meaning of the foregoing statutes, and a notice served on him to defend, as provided in 5263, supra, does not authorize a court to enter judgment against him, the heir, for damages on breach of the covenant. Proper pleading must be filed by the evicted grantee against the heir, and service of summons be had as provided in the general Code of Civil Procedure, and a judgment entered against the heir without this is void.

6. **Same—Damages to Evicted Grantee as Provable Debt Against Estate of Grantor—Enforcement Against Heirs or Devisees by Suit in Equity Where Estate Closed.**

Where judgment is had against a grantee for recovery of land conveyed to him by warranty deed of a deceased grantor, the amount of such damage, constituting the judgment of recovery, is a provable debt against the estate of the decedent. If no administration has been had on the estate of the warrantor, the evicted grantee, as a creditor, has a right to have one appointed and present his claim. If the administration on the estate of the deceased warrantor be pending at the time of the recovery against the warrantee, the warrantee may present his claim within 30 days from the date of the judgment against said estate, under section 1234, C. O. S. 1921, though the time to present claim has expired. But if administration has been had, and the estate closed, and property belonging to the estate has been distributed to heirs, or devisees, relief may be afforded the warrantee by suit in equity in the district court against such heirs or devisees to compel them to refund to the grantee so much of what they have received as shall be sufficient to satisfy his damage.

Commissioners' Opinion, Division No. 1.

Error from District Court, Sequoyah County; J. T. Parks, Judge.

Action by Joshua Nofire et al. against T. F. Harmon et al. Judgment for plaintiff George Killer against defendant Harmon, and from an order of the district court setting aside a judgment subsequently rendered in favor of Harmon against Lubia Hines, India Weems, nee Hines, L. S. Hines, and Freeda Clair Hines, as heirs at law of R. W. Hines, deceased, and W. R. Gragg and W. E. Matthews, Harmon brings error. Affirmed as to the Hines heirs, and reversed as to defendants Gragg and Matthews.

Allen & Jarman and T. M. McCombs, for plaintiff in error.

W. L. Curtis, for defendants in error.

REID, C. This case was tried upon the second amended petition filed by certain plaintiffs on March 18, 1921, against T. F. Harmon and another defendant to recover an undivided interest in a tract of land as the heirs of Annie Guineahead, deceased, to whom the land was allotted as a member of the Cherokee Tribe of Indians.

On the 5th day of April, 1921, the defendant Harmon caused to be served by the sheriff of Sequoyah county, Okla., a notice on the parties therein named, which notice is of such importance in the consideration of this cause that we deem it necessary to set the same out in full, as follows :

"To L. C. Moore, administrator of the estate of R. W. Hines, deceased, Lubie Hines, India Weems, nee Hines, L. S. Hines, and Freeda Clair Hines, heirs at law of said R. W. Hines, deceased; and to W. R. Gragg, J. E. Patrick, and W. E. Matthews:

"You will take notice that a suit has been filed by the plaintiffs, Joshua Nofire et al. against T. F. Harmon et al., defendants, in district court of Sequoyah county, Okla., numbered 2993, as above set out, to recover the following described real estate located in Sequoyah county, Okla., to wit: (Land described here.)

"That the above-described land was transferred and conveyed by R. W. Hines, W. R. Gragg, J. E. Patrick, and W. E. Matthews, by their respective warranty deeds, and the defendant T. F. Harmon is now claiming to be the owner and is holding said land under a warranty deed. You are hereby notified of such action, and you are requested to defend the same under the terms of the warranty deed hereinabove referred to.

"Dated this the 24th day of March, 1921.

"J. H. Jarman,
"Attorney for Defendants."

On the 13th day of June, 1921, Harmon filed his amended answer to the amended petition of the plaintiffs, in which he alleged that he was the owner of the lands by regular chain of title from the heirs of said deceased Indian allottee. He stated the names of the heirs, and alleged that they conveyed to W. H. Brackett, and that by regular chain the title came to W. E. Matthews, who conveyed the land by warranty deed to him.

The case proceeded to trial on the 13th day of June, 1921, and on the 15th day of said month, the court entered judgment for George Killer, one of the plaintiffs, against Harmon for an undivided one-fourth interest in the land. There is nothing in this decree showing that any phase of the case was passed for further consideration.

On June 16, 1921, the defendant Harmon filed in this case a petition in which he designated the parties as follows:

"T. F. Harmon, Plaintiff, v. W. R. Matthews, W. R. Gragg, L. C. Moore, Administrator of the Estate of R. W. Hines, Deceased, and Lubie Hines, India Weems, nee Hines, L. S. Hines, and Freeda Clair Hines, heirs of said R. W. Hines, Deceased, Defendants."

In this petition he alleged he was one of the defendants in the original cause of action, and that by judgment of the court on June 15, 1921, he was evicted from an undivided one-fourth interest in the land by one of the plaintiffs, George Killer. He further alleged that he bought the land by warranty deed from W. E. Matthews and wife; that Matthews bought from J. E. Patrick and wife, and Patrick bought from W. R. Gragg and wife; that Gragg bought from R. W. Hines, who died prior to the filing of the action, and left surviving, as his sole heirs at law, Lubie Hines, India Hines, then Weems, L. S. Hines, and Freeda Clair Hines, and that L. C. Moore was the duly appointed, qualified, and acting administrator of the estate of the said R. W. Hines; that by virtue of the judgment of eviction of him, the said T. F. Harmon, declaring George Killer to be the owner of an undivided one-fourth interest in said land, and awarding him the possession thereof, he was entitled to recover from the said warrantors, W. E. Matthews, W. R. Gragg, and L. C. Moore, administrator aforesaid, and the heirs of said R. W. Hines, deceased, the damage that he had suffered by reason of the failure of his warranties; that notice of this action, demanding that the warrantors appear and defend the title to said lands involved in the action, was duly served upon the warrantors, their heirs and representatives. He prayed judgment against the warrantors, W. E. Matthews and W. R. Gragg, and against L. C. Moore, as administrator aforesaid, and against the parties named as the heirs of R. W. Hines, deceased, for the damage sustained by him on account of the recovery by the plaintiff George Killer.

On the same day the petition was filed by Harmon, the court entered judgment finding the execution of the warranty deeds and the eviction of Harmon from an undivided one-fourth interest in the lands in accordance with the allegations of Harmon's petition, and rendered a judgment against Matthews and Gragg, and each of the parties named as heirs of R. W. Hines, for the items of damage sustained by Harmon.

Neither of the parties served with the notice to defend the action had appeared in the case at any stage of the proceedings.

On June 24, 1923, Ellis Hines, one of the heirs of R. W. Hines, appeared specially by motion filed in the trial court and asked that the purported judgment rendered against him and his codefendants on June 16, 1921, be set aside for the reason that no summons had been served on the defendants as required by law, and that at the time the judgment was entered the case had been closed and the court had no authority, as a matter of procedure, to enter judgment against the defendants at the time it did and as the record then stood. After service of notice of hearing this motion, the court sustained the same, and set the judgment aside as to all the defendants; to which Harmon excepted and brings this appeal.

Conceiving that the questions determining the liability of the defendants Gragg and Matthews and the heirs of R. W. Hines are not the same, we will consider them separately, and first examine the case as to Gragg and Matthews.

It will be observed that the judgment in this case was set aside two years after the same was entered, and obviously at a subsequent term of court. The notice which Harmon caused to be served upon the persons in this case was sufficient as to all those bound to him by warranty deeds in his chain of title. In many jurisdictions a verbal notice to the warrantor requesting him to defend is sufficient, but, in this state, it is provided by section 5262, C. O. S. 1921, that the notice shall be in writing, but it nowhere provides that the clerk shall give the notice; and looking to the verbiage of sections 5262 and 5263, C. O. S. 1921, it appears clear that the notice required to be given is not a writ or process within the contemplation of article 7, sec. 19 of the Constitution, nor is it process coming within section 862, C. O. S. 1921.

We think that in principle the case of Armstrong v. Phillips, 82 Okla. 82, 198 Pac. 499, is authority for this holding.

And we have been cited to no authority, and have been unable to find any, holding that the various sections of our Code, providing for notice to be given under certain conditions, refer to process or writs within the meaning of the foregoing sections of the Constitution and Code of this state.

Having concluded that the notice in the

case was in all things sufficient, we are of the opinion that, after the time had expired as provided in the notice after service thereof, the warrantors, Gragg and Matthews, in effect were parties to the action, and bound by the subsequent proceedings. While it is true Harmon had not filed any pleadings over against these warrantors, asking for judgment against them in the event judgment went against him, yet he had served them with notice that this suit had been filed by the plaintiffs against him to recover the lands, which he described; that the land had been conveyed by their respective warranty deeds, and that he was the owner and holding the lands under a warranty deed, and requested them to defend the action against him under the terms of warranty deeds they had given.

There was no necessity for Harmon pleading against the warrantors until the plaintiff had recovery against him. After the notice was served, the warrantors, Gragg and Matthews, were in duty bound to either answer with a denial that they had warranted the title to these lands, or take up the defense of Harmon's title. After the notice was served on them, they were, in legal effect, present in court at all subsequent proceedings in the case.

Having concluded that these warrantors were in court June 15, 1921, at the time the judgment was rendered in favor of George Killer against Harmon, they were then charged with notice of such recovery, and of Harmon's right to recover then in the same action against them. And they also had notice that this right of Harmon's was not determined in the decree of June 15th. However, it is not necessary for us to decide whether the failure of this decree to show a continuance of this phase of the case, between Harmon and the warrantors, prevented the court from considering that question on the 16th of June, for the reason that the journal entry of the 16th carried the following:

"Now, on this, the 16th day of June, 1921, court being regularly in session for the transaction of business, the above styled cause comes regularly on for hearing, the same having been continued from June 15th to this date, and the same being a part of the case of Joshua Nofire et al., Plaintiffs, v. T. F. Harmon et al., Defendants, No.2992, pending in this court, and this part of the cause involves the damages or loss sustained by the said T. F. Harmon, who is one of the defendants in said main cause of action, by failure of warranty as to an undivided one-fourth interest in and to said lands hereinafter described."

If any order was necessary, this had the effect of an order nunc pro tunc, continuing the case as between Harmon and the warrantors until June 16, 1921. We find the rule applicable to this question in 29 Cyc. 1516, stated as follows:

"An order can be entered nunc pro tunc to make a record of what was previously done by the court, although not then entered."

These warrantors, having been served with proper notice, and proper pleadings being filed as against them, and the case as to them being ready for trial, and they being in every way in default, and having failed to defend the obligation to their warrantees as they should have done, the judgment of the court entered against them on June 16th was proper. And the order of the court made on July 30, 1923, setting the judgment aside as to them was without authority of law and of no effect.

Now let us see whether the trial court erred in setting aside the judgment against the heirs of R. W. Hines.

It is contended by the plaintiff in error, Harmon, that the warranty deed in this case, given by R. W. Hines and his wife, being in substantial compliance with chapter 33, C. O. S. 1921, relating to conveyances, by the expressed terms of section 5259, "that the covenant of warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed," there is a personal liability on the part of the Hines heirs, conditioned, however, it is admitted, upon their receiving property from his estate.

Let us see what the statutes of this state are, in addition to the foregoing, which the plaintiff in error says fix the liability against these heirs. Section 5263, C. O. S. 1921, provides:

"In all cases where an action is brought against a grantee to recover real estate conveyed to him by warranty deed, he must notify the grantor **or person bound by the warranty** that such suit has been brought at least 20 days before the day of trial, which notice shall be in writing, and shall request such grantor **or other person** to defend against such action; and in case of failure to give such notice, there shall be no further liability upon such warranty, except when it is clearly shown that it was impossible to make service of such notice."

And section 5265 is as follows:

"If a warrantor **or other person bound by a warranty** shall fail to appear and defend after due notice as above provided, the warrantee may defend the action and recover in a separate suit all sums expended the same as .he might do in the same suit, as provided in this chapter." (Emphasis ours.)

And it is contended that the "other person bound by the warranty" must be construed in connection with 5259, supra, to include the heirs of a deceased warrantor.

The "other person bound by the warranty," referred to in the foregoing sections, is unquestionably a person whose liability was unconditional if the covenant failed, at the time the deed was delivered, and upon it rested a vested right which accrued to subsequent vendees upon breach of the warranty. If it created any liability against the heirs, no person had the power to extinguish it except its beneficiaries.

If R. W. Hines had thereafter made a will mentioning therein each of his children, as provided by the law of this state, but giving to them no property, and had named as his sole legatee a stranger, it could hardly be contended that these children, who are here his heirs, would be under any legal obligation to answer for a breach of this covenant. But the devisee receiving assets from his estate could be called upon to pay the damages resulting from the breach, to the extent of property received, if the warrantee had no opportunity to present his claim to the estate of Hines.

It is true that the liability of the heirs is as great as if it were written in the deed, but writing it in the deed would have fixed no personal liability against the heirs of R. W. Hines, and a **personal liability, unconditional,** is what is meant.

The heirs in this state do not inherit the debts of their ancestors; cannot be called upon to pay them in any way, except as fixed by the probate law of this state, and if we had a statute which expressly provided that the heirs of an ancestor would be held for payment of his debts by reason of a contract made by the ancestor attempting to bind the heirs, no court would hold such law valid.

In the case of Hancock v. Cochran, 126 Okla. 126, 258 Pac. 1046, we held that, as determined by the law of the state of Texas, in construing the liability of an heir on the covenant in a deed conveying land in that state, no action could be maintained against the heirs of a devisee where the grantee had an opportunity to present his claim to an executrix of the estate of the deceased grantor and failed to do so; and the cases from other jurisdictions there cited are sufficient for that holding. And in that case attention was called to the fact that the Texas statute there under consideration was similar to section 5259, supra. That case in principle, and those cases therein cited, are in effect decisive of the proposition here presented, for in that case the plaintiff, after having an opportunity to present his claim for breach of warranty to the executrix, and failing to do so, sought judgment against the heirs, which we held could not be had under those conditions.

If an ancestor binds his heirs by naming them in his covenant of warranty, then we see no reason for making their liability thereafter dependent upon whether the damaged warrantee exercised his right to present his claim to an administrator of the deceased warrantor.

In the case of Chitty v. Gillett, 46 Okla. 724, 148 Pac. 1048, this court discusses with much detail the circumstances under which heirs in this state may be called upon to answer for the debts of their ancestors, and states the substance of the rule as follows:

"Where a claim against the estate of a deceased person does not accrue or become enforceable until after the administration of the estate has been closed, and all the property has been distributed and passed into the hands of the heirs, its collection may be enforced by a direct action, in the district court, against the heirs of the deceased, and they may be held liable in such an action to the extent of the assets received by them from the estate."

It will be observed that the foregoing opinion reviews the case of Rohrbaugh v. Hamblin, 57 Kan. 393, 46 Pac. 705, and as the opinion covers two important questions in this case, we quote from it at considerable length:

"Final settlement had been made six years before there was a breach of the covenant of warranty, and under such circumstances we hold that relief may be afforded in equity directly against the beneficiaries of the estate to compel them to refund that which in good conscience they ought not to retain. It is true that while an estate remains unsettled, and the probate court is still exercising jurisdiction over it, the district court should not, except in special cases, entertain an action for relief properly grantable by the probate court; but we think it follows from a long line of decisions of this

court, that the district court may properly entertain jurisdiction in a case of this character. The following are some of the authorities, and they refer to most of the others: Shoemaker v. Brown, 10 Kan. 383; Klemp v. Winter, 23 Kan. 699, 705; Stratton v. McCandless, 27 Kan. 296, 306; Kothman v. Markson, 34 Kan. 542, 550, 9 Pac. 218; Gafford v. Dickinson, 37 Kan. 287, 291, 15 Pac. 175; McLean v. Webster, 45 Kan. 644, 648, 26 Pac. 10, and In re Hyde, 47 Kan. 277, 281, 27 Pac. 1001. The court of appeals relied on Fox v. Van Norman, 11 Kan. 214, but we think that case is distinguishable from this as from McLean 'v. Webster, supra, as stated by Chief Justice Hortin, in said case.

"The defendants claim that, in any event, the judgment of reversal was proper on other grounds, one of which only we think it necessary to discuss. The covenant of warranty does not assume to bind the heirs of George W. Hamblin, and it is well settled in England that in such case they would not be liable. In order to hold them liable on such covenant, it was necessary to show that they were named therein, and that they should have assets by descent sufficient to meet the demand. 2 Bl. Comm. 304, and Rawle, Cov. sections 309, 310. The latter author says: 'The liability (whether immediate, or ultimate) of the heir by reason of his ancestor's covenants for title depends in this country, to a great extent, upon the statutory provisions adopted in the different states for making the real estate of a decedent liable for the payment of his debts. * * * In the United States, it may be said that, as a general rule, lands are liable for the debts of a decedent, whether due by matter of record, by specialty, or by simple contract. In the last two cases, the existence of the debt, unless it be reduced to judgment, creates no lien during the debtor's life. By his death, however, its quality is changed, and it becomes a lien upon his real estate, which descends to the heir, or passes to the devisee, subject to the payment of the debts of the ancestor according to the laws of the state in which it lies; and the rights of the creditor can, in most of the states, be enforced against the lands in the hands of a bona fide purchaser within certain statutory limitations as to time.' In this state realty does not become liable to the payment of the debts of the estate until the personalty has been exhausted, in which case it may be applied to the fullest extent unless exempt; and, by analogy, when all the assets have been converted into money, and distribution has been made to the heirs, devisees, or legatees, and an obligation of the ancestor or testator then matures, such beneficiaries of the estate ought to be compelled to refund to the claimant so much of what they have received as shall

be sufficient to satisfy it. **Strictly speaking, the beneficiaries are not liable in an action at law, even when named in the covenant, for they can only be held to the extent of the assets received from the estate. Such action should be equitable in form to subject the assets received by the beneficiaries to the payment of the debt,** but in this case no point was made in the district court as to the form of the action, nor as to the character and amount of the judgment, provided the plaintiff should be entitled to recover; and, the amount received by each of the defendants being greater than the plaintiffs' claim, there was no substantial error in rendering judgment in its present form, the defendants being liable to contribution as between each other. The judgment of the court of appeals must be reversed, and the judgment of the district court will be affirmed." (Emphasis ours.)

It will be seen from the foregoing opinion that the warranty in that case did not purport to bind the heirs of the warrantor, but it will be observed that the court, in effect, holds that this would not have created any different liability against the heirs, but rests the liability alone upon their receiving assets from the estate.

In the case of Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931, the Supreme Court of that state discusses at length the condition under which heirs may be called upon to pay debts incurred by their ancestors, under the common law and the civil law, including debts in which the ancestor had specially bound his heirs. And the statutory law of that state affecting this question, as shown by the opinion, being in effect, in substance, similar to that of this state, we quote from that case at length:

"If the creditor has only the right under the law to subject the property the heir, devisee, or legatee received from his debtor Epperson to the payment of his claim, the petition is clearly defective in not setting forth the property received by each so that it may be by proper decree subjected. The question to be determined then is, Has the creditor a right to personal judgment against the heir, devisee, or legatee, or has he merely the right as against him to reach the property received by him from the debtor and subject it to the claim?

"Under the civil law the acceptance of the succession by the heirs rendered them liable for the ancestor's debts, and in Louisiana the heir has the right to so qualify his acceptance that he may avoid personal liability by abandoning the effects so received to the ancestor's creditors. Montgomery v. Culton, 18 Tex. 749; Succession of Murray,

41 La. Ann. 112. It is evident that under such a system, it was hazardous for the heir to accept, since the ancestor's debt might absorb not only the property so received, but also the individual estate of the heir.

"Under the common law, the heir took the lands discharged of all debts of the ancestor except specialties in which he had been specially bound, his liability in such case being on the contract, by which the ancestor was authorized to bind him personally to the extent of the value of the lands descended, so long as they remained in his possession, but there was no lien on the lands, nor personal liability on his part after he had conveyed them (Investment Co. v. Smart, L. R. 10 Ch. App. Cases 577), and the devisee took the lands free from all debts of the ancestor (Sauer v. Griffin, 67 Mo. 654; 3 Williams on Executors, ch. 11), while the executor or administrator took the property to which he was entitled under the law subject to the payment of the decedent's debts. (Emphasis ours.)

"Thus under the civil law, great injustice might be done the heirs by absorbing both the ancestor's and his own property in the payment of the ancestor's debts, and under the common law, a like injustice might result to the creditor by allowing the heir to take valuable lands free of debts where he had not been bound by any specialty, or even if he had, to evade his liabilities, thereon by a sale of the lands before suit, or by allowing the ancestor to practically defeat even specialty creditors by devising his lands. (Emphasis ours.)

"In order to remedy some of these evils, statutes were enacted in England at an early day imposing upon the devisee a like liability to that resting upon the heir and making both liable, not only while they retained the property, but for its value, in case they sold same. See statute set out in Williams on Executors, vol. 3, chap. 2. But under the common law thus amended by statute, the ancestor's debts, even by specialty, were not charged as a lien on the lands, and the heir or devisee could prevent the creditor from subjecting them by transferring to a bona fide purchaser before suit. Spackman v. Timbrell, 11 Eng. Ch. Rep., 424.

"From this general statement of the condition of the civil and common law modified by English statutes, it may be seen that it was advisable when our Legislature came to enact our probate law in 1848 to make radical departure from both in order to do equal justice to creditors on the one side, and heirs, devisees, and legatees on the other.

"Therefore, they provided, 'Then when a person dies, leaving a lawful will, all of his estate devised, or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person not devised or bequeathed shall vest immediately in his heirs at law; but all of such estate, whether devised or bequeathed, or not, except such as may be exempted by law from the payment of debts, shall still be liable and subject in their hands, to the payment of the debts of such testator; and whenever a person dies intestate, all his estate shall vest immediately in his heirs at law, but, with the exceptions aforesaid, shall still be liable and subject, in their hands, to the payment of the debts of the intestate. But upon the issuance of letters testamentary or of administration, on any such estate, the executor or administrator shall have a right to the possession of the estate, as it existed at the death of the testator or intestate, with the exception aforesaid; and it shall be his duty to recover possession of and hold such estate in trust, to be disposed of under the provisions of this act.' Sec. 112, Act. approved March 20, 1848, p. 277. It will be observed that this statute provides:: (1) That upon the death of a person the title to all his property shall immediately vest in the heirs, devisees, and legatees, as the case may be; (2) that it 'Shall still be liable and subject in their hands to the payment of the debts of' the decedent, thereby fixing a lien upon same to secure the payment of such debts so long as it remains in their hands, but not imposing any personal liability therefor, and not attempting to follow it into the hands of bona fide purchasers; (emphasis in original opinion); and (3) that upon the issuance of letters testamentary, the executor or administrator shall take possession of the property to be administered as provided by law. Other portions of the same act made careful provision for the taking charge of and administration of the estate by the executor or administrator, whereby the property is to be (1) applied to the various classes of claims, and (2) the remainder is to be delivered to the heirs, devisees and legatees. Under the well settled construction of these provisions, the heirs, devisees, and legatees cannot make such a disposition of any part of the estate during the period in which it is subject to administration that will defeat the subjection thereof to the claims of creditors through such administration (Cooper v. Loughlin, 75 Tex. 524; Templeton v. Ferguson, 89 Tex. 47), and the creditors cannot, as a general rule, subject the property to their claim during such period in any other way than through such administration. Graham v. Vining, 1 Tex. 639; Graham v. Vining, 2 Tex. 433; Robertson v. Paul, 16 Tex. 474; Ansley v. Baker, 14 Tex. 607; Cunningham v. Taylor, 20 Tex. 126; Green v. Rugley, 23 Tex. 536. Thus, under the broad scope and just intendment of said section 112, when read in connection with

the provisions above referred to, the title to the property vests immediately in the heirs, devisee, or legatee, and he may at once accept and take possession thereof as such without subjecting himself to the liability imposed by the civil law of paying the debts of the ancestor, or to the liability of an executor de son tort under the common law (Ansley v. Baker, supra) ; but the property comes into his hands charged with the statutory lien in favor of the creditors of the decedent, and he must yield such possession to the duly appointed executor or administrator, who is the statutory trustee to hold and dispose of the same among creditors, heirs, etc., as they may be entitled under the law, and all persons dealing with the heir, devisee or legatee are charged with notice of the fact that such trustee may within a given time be appointed, and of his powers and duties, and therefore cannot during such time be a bona fide purchaser or acquire any rights from or under them which will prevent the execution of such trust. Cooper v. Loughlin, 75 Tex. 524. There is nothing in the language of the provisions above referred to indicating a legislative intent either to relieve the property that may be returned to the heir, devisee, or legatee by such trustee from the statutory lien aforesaid as to debts that may still be unsatisfied, or to charge such heir, devisee, or legatee personally therewith. But there is an intent on the face of the statute above quoted that the property thus in the hands of the heir, devisee, or legatee, and not any longer subject to be taken by the statutory trustee, may be passed free of such lien to a bona fide purchaser, for the statute does not undertake to extend the lien any longer than the property is 'in their hands.' In legal contemplation it would still be 'in their hands' if the transfer were fraudulent in law, but would not be if transferred to a bona fide purchaser. The wisdom of the statute in not extending the lien any longer is apparent, for it would unduly cloud titles to allow the obligations of the ancestor which might not accrue for years, as in cases of breach of warranty, to follow the property into the hands of bona fide purchasers from the heirs, devisees, and legatees. The heir, devisee, or legatee would doubtless be liable to the creditor for the injury done him in defeating his lien by thus disposing of the security. Boothe v. Fiest, 80 Tex. 141; Zapp v. Johnson & Dick, 87 Tex. 641."

By virtue of section 1256, C. O. S. 1921, of the Probate Code, all property of a decedent, except the homestead and certain personal property which may be set aside to the wife and minor children, being chargeable with payment of the debts of the deceased, is in legal effect impressed with a lien for such payment.

We have therefore arrived at the conclusion that in no way does a greater obligation rest upon heirs to pay the debts of their ancestors, by reason of the breach of a covenant of warranty given by the ancestor, than they are required to pay any other debt for him. The rule of the common law, as it once existed in England, in this particular, has no place in the jurisprudence of this state. And having found that no personal liability existed against the heirs of R. W. Hines by reason of the breach of the covenant made by him, it follows that they did not come within the purview of the remedy of a warrantee provided for in sections 5262 to 5265, inclusive, supra.

The cases of Chitty v. Gillette, Rohrbaugh v. Hamblin, and Blinn v. McDonald, all supra, are in harmony, and when thoroughly considered, it will be found that they set out the procedure necessary to be followed by a creditor of an ancestor in subjecting property in the hands of the heirs for satisfaction of his debt, or for obtaining personal judgment against the heirs.

The notice and pleading filed by Harmon in the case show administration at that time on the estate of R. W. Hines. These are included in the record, and would incline us to the opinion that the case was then pending. However, it is now suggested, aside from the record, that the administration was closed. We will therefore consider the question from both angles.

If the administration was pending in this case at the time recovery was had by Killer against Harmon, under section 1234, C. O. S. 1921, Harmon had 30 days after the judgment went against him to present his claim to the administrator of the estate of R. W. Hines. See Carrico v. Couch, 45 Okla. 672, 146 Pac. 447; O'Neil v. Lauderdale, 80 Okla. 170, 195 Pac. 121. And it was a claim required by the laws of this state to be presented to an administrator. Bilby v. Hart-Parr Co., 103 Okla. 53, 226 Pac. 360; Clover v. Neely, 116 Okla. 155, 243 Pac. 758.

We do not determine whether any motion was necessary to authorize the trial court to set aside the judgment as to the Hines heirs, but, if it was, the motion was broad enough for the court to do so under the law as we have herein found it.

The judgment should be reversed and remanded, with directions to the trial court to set aside that part of the order appealed from as to the defendants Gragg and Matthews, and permit the judgment against them

to stand. And that the order of the trial court in setting aside the judgment against Lubie Hines, India Weems, nee Hines, L. S. Hines, and Freeda Clair Hines, should be affirmed.

BENNETT, TEEHEE, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

LEACH, C., dissents.

Commissioner HERR concurs in the result, but dissents in part to the propositions of law as announced in the 5th paragraph of the syllabus.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 1264, § 96. (4) 18 C J. p. 940, §271; 24 C. J. p. 458, §1260; anno. 21 L. R. A. 89; 9 R. C. L. p. 99 et seq. (5) 15 C. J. p. 1262,§ 89.