## TURNER v. NICHOLSON.

No. 19178. Opinion Filed March 11, 1930.

Rehearing Denied April 29, 1930.

Neff & Neff, for plaintiff in error.

Hatchett & Ferguson, for defendant in error.

REID, C. Samuel E. Turner brought this suit against Mayme Nicholson to recover possession; and quiet title to certain land in Bryan county. Plaintiff alleged title to portions of the land by inheritance from her mother, and that the balance of the land was allotted to her as a Choctaw Indian. The defendant answered with a deed purporting to have been made by the plaintiff May 24, 1916, conveying the lands to Omer R. Nicholson, and also a later deed conveying the same by him to the defendant. The plaintiff replied by denying the execution of the first deed, but alleging that, if she did sign and acknowledge the same, she did it through the fraudulent practice on her of one George E. Turner, by which he caused her to sign the deed under the impression and with the understanding that the same was another instrument. In substance, the allegations as to the deed constituted a charge of forgery of it in the second degree, as defined by section 2095, C. O. S. 1921.

The former appeal of this case may be found in 115 Okla. 56, 241 Pac. 750. When the case was returned to the district court, a jury trial was had, which resulted in a verdict in favor of the defendant. Judgment was entered, and the plaintiff again appealed.

It is not contended that any question involved and decided in the former appeal is offered here; however, as we shall not here go into an extended discussion of the facts, a perusal of the other opinion might be helpful to a more complete understanding of the question now in hand.

The defendant first contends that the court erred in permitting Omer R. Nicholson, husband of defendant, Mayme Nicholson, to testify in the case, claiming that he was incompetent under that part of section 589, C. O. S. 1921, providing as follows:

"The following persons shall be incompetent to testify: * * *

"Third, Husband and wife, for or against each other except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted, or afterwards."

In construing a statute, it is always helpful to ascertain its source and the reasons for its existence. As throwing light upon the foregoing statute, we quote from Jones' Commentaries on Evidence (2nd Ed.) vol. 5, sec. 2128, as follows:

"As shown in the preceding subdivision of this chapter, parties and persons interested were incompetent as witnesses at common law. It was but a short step from this to declare spouses of parties and persons interested incompetent under the anciently settled legal concept of oneness above referred to. The result was inevitable upon that score, although further justification for the rule was adduced in the form of public policy, so-called, to prevent domestic discord and to further connubial harmony by forestalling quarrels between man and wife about what one might say, or had said, on the witness stand for or against the other. Since the general rule of the common law that parties and persons interested are incompetent is now universally abrogated, it might well be thought that its offspring, this rule making husband and wife incompetent by reason of oneness with a party or person interested, would likewise fall. But such is not universally the case, though large inroads have been made upon it in various jurisdictions by statute. The reason why it has not been wholly abrogated is because of the second reason adduced in its support, namely, that it fosters domestic harmony and prevents discord, and is therefore sound public policy. In other words, the afterthought is now the actual reason of the rule, to the extent that such rule is retained."

In further discussing the matter, the same writer, in section 2139, said:

"In England, very radical changes have been made in the common-law rules, and husband and wife are now, in general, competent witnesses for or against each other in civil actions, except that they cannot be compelled to disclose confidential communications." Citing 32 and 33 Vic. c. 68, section 3.

Section 589, supra, was adopted by us from the state of Kansas. But in 1909 the Legislature of that state enacted a new Gen-

eral Code of Civil Procedure, and, in keeping step with the progress of the law changed the section so as to thereafter only prohibit the husband or wife from testifying for or against each other concerning any communication made by one to the other during the marriage. Thus it is seen that the jurisdiction from which this principle came to us has seen proper to abandon that part of the rule here invoked.

However, the statute, as it remains with us, does by exception in express terms permit the other to testify "concerning transactions in which one acted as the agent of the other, **or where they are joint parties and have a joint interest in the action.**" And the defendant claims that the record brought her husband within the latter exception for the reason that she held the land under a warranty deed from him, and had served him with notice of the suit and to defend his warranty; thus making him in legal effect a joint party with her, with a joint interest in the action.

It is obvious that we must first see whether Nicholson was bound to her by his warranty. At common law the husband and wife could not contract with each other. This rule also rested on the theory that they were, in legal contemplation, one person. 13 R. C. L. 1359, sec. 403. But we have changed that rule by section 6609, C. O. S. 1921, which provides:

"Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the action of persons occupying confidential relations with each other as defined by the title on trusts."

It is evident that, under the foregoing statute, the covenant of warranty in Nicholson's deed to his wife was enforceable by her against him, if her title failed. Stated another way: If the plaintiff was successful in her allegations that the deed appearing to have been made by her on May 24, 1916, to Nicholson was a forgery, then this defendant was entitled to recover from him on his warranty.

After Nicholson was served with notice, he filed an application to be allowed to appear and defend his warranty, and adopted the answer and pleadings of the defendant, Mayme Nicholson; but the record does not disclose that the court made the requested order. However, it is our conclusion that neither the request nor the absence of an

order granting it affected Nicholson's relation to the case at the time of the trial, so far as the question presented here is concerned; for, upon service of the notice, a judgment of eviction against the defendant would have also established his liability on the warranty, and the defendant could thereafter, in the same suit, or in another action, have recovered from him the amount of her damage. Sections 5262 to 5265, inclusive, C. O. S. 1921; Samson v. Zimmerman, 73 Kan. 654, 85 Pac. 757; Stonebraker v. Ault, 59 Okla. 189, 158 Pac. 570; Harmon v. Nofire, 131 Okla. 1, 267 Pac. 650.

In 7 R. C. L. p. 1197, sec. 121, the rule is discussed in this language:

"Under the ancient common law of warranty, when an action was brought against the purchaser, he has his right of vouching in his grantor who had warranted his title. If the vouches appeared, he was made defendant instead of voucher, but if he neglected to appear, and a recovery was had against the purchaser, he had judgment against the vouchee to yield him other lands of the value of those from which he had been evicted. In analogy to this ancient practice under the old common-law warranty, it has become customary in most of the states of this country, whenever an action is brought upon a paramount claim against any person entitled to the benefit of the covenant of warranty of title, that he should give proper notice to such warrantor of the pendency of the suit, requiring him to come in and defend it, and by so doing he relieved himself from the burden of proving, in an action for breach of the covenant, the validity of the alleged paramount claim. The doctrine is well established that a judgment against a warrantee, in an action of which the warrantor had proper notice, is conclusive against the warrantor, in the absence of fraud or collusion."

The witness Nicholson and his defendant wife were interested in a common defense of the title he had warranted to her, and in maintaining her possession of the land. By the circumstances of his situation, he became and was at the time he testified, in legal effect, a joint party with his wife, and jointly interested with her in defeating the action.

The exception provided for in section 589, supra, that the husband or wife may testify for or against each other when they are joint parties, should be understood as also contemplating the spouse testifying under these circumstances **for or against himself;** as, in effect, in this case. In fact, this would seem to be one of the objects of the exception, for a spouse standing alone as a party to a case can testify then for himself, or be

called by his adversary. Section 585, C. O. S. 1921. When Nicholson testified in behalf of his wife, he also testified for himself.

The Supreme Court of Louisiana, in declaring the law upon the situation here presented in the case of Shantz v. Stoll, 34 La. Ann. 1237, in the syllabus said:

"In a suit to evict the wife from property transferred to her by her husband, in satisfaction of her rights against him, the latter may be a witness on his own interest as warrantor."

The only testimony of Nicholson admitted by the court and complained of by plaintiff, tended to show that the deed was not a forgery in that he paid a fair value for the land, and had his negotiations therefor with George E. Turner, who acted for the plaintiff in the matter. And, having concluded that Nicholson's liability on his warranty would have become res adjudicata by a judgment for plaintiff, then it surely must follow that there exists no law of this state which would preclude him from testifying when his liability was being determined.

We have heretofore found the source of the rule here sought to be applied and the reasons therefor. It occurs to us that those reasons have been almost eliminated by the enactment of section 6609, supra, and that it should follow that the statute here invoked should now be construed in harmony with the spirit of our day, and as exemplified in the other statute just mentioned.

So, that, viewed from either angle, it follows that the trial court did not err in the ruling.

The plaintiff next complains of certain testimony given by one J. Fentress Wisdom, admitted over her objection.

In order to determine whether this evidence was admissible for any purpose, it is necessary to view the circumstances under which it was admitted. Plaintiff's effort to cancel the deed and thus recover the land was predicated upon the allegation that George E. Turner had secured her signature to the deed to Nicholson by artifice and deceit amounting to a forgery; that he had caused her to believe that she was signing some other instrument. That was the deciding question in the case. She testified to facts tending to establish her charge. She also had said that, after she went from Caddo, Okla., to Muskogee, in March, 1916, she saw Turner only once or twice before they were married on June 11, 1917. One of these times was when she signed the deed. The defendant thereafter introduced evidence tending to show that, covering the time when the deed was signed, Turner was acting as plaintiff's agent and managing her affairs, including the land in controversy. The notary public who took her acknowledgment of the deed to Nicholson, which plaintiff claimed was a forgery, testified without objection by defendant, that on April 8th and 29th, when plaintiff signed other instruments before her, and a.so on May 24, 1916, when plaintiff acknowledged the deed in controversy. Turner was with her on each occasion. Going to the evidence of the witness Wisdom, we find he testified by deposition on direct examination by plaintiff that he then lived in Muskogee and did in April and May, 1916; that he was president of the Wisdom Real Estate & Investment Company, which owned the Wisdom flats on South C. street in that city, and had the management of those flats. He was asked if he knew the plaintiff at that time, and he replied "I knew her as Mrs. Turner." He further testified that from March 23 to April 14, 1915, she occupied flat No. 111 of the apartment; that she was then in bad physical condition, and could not walk without crutches. On cross-examination by defendant's counsel, witness further testified that her physical condition did not appear to affect her mentally. Then, over the objection of plaintiff, he testified that she and Turner lived together there at that time as man and wife, and that he only knew her as Mrs. Turner.

It is plaintiff's contention that this particular evidence tended to show that she was guilty of immoral conduct, and therefore highly prejudicial, as she was not then married to Turner.

It is recognized that, under the general rule followed by the decisions of this court, if such evidence tended only to establish the fact suggested, then it would not be admissible. But, when the plaintiff testified, her evidence was subject to impeachment or contradiction in the same manner as that of any other witness. The evidence complained of tended to impeach and contradict her testimony to the effect that she was not aware of signing the deed. This evidence also tended to show a close relation between her and Turner at that time, and to thus contradict her claim that she was, under these circumstances, ignorant of signing the deed. Jones' Commentaries on Evidence, supra, sec. 2412, and authorities there cited. The fact that the evidence might have also tended to prove some fact not generally admissible did not require its exclusion.

The judgment should be affirmed, and it is so ordered.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 28 R. C. L. pp. 487, 488; 4 R. C. L. Supp. p. 1826; 5 R. C. L. Supp. p. 1541. (2) 28 R. C. L. pp. 615, 620. See "Witnesses," 40 Cyc. p. 2223, n. 16; p. 2230, n. 57; p. 2558, n. 62; p. 2765, n. 19.