**MILES v. SPARKS.**

No. 35570.

Supreme Court of Oklahoma.

July 7, 1953.

Rehearing Denied Oct. 13, 1953.

Application for Leave to File Second Petition for Rehearing Denied Nov. 3, 1953.

Primus C. Wade, Tulsa, for plaintiff in error.

Manatt, Knight & Knight and Earl Knight, Tulsa, for defendant in error.

## PER CURIAM.

Briefly the facts are as follows: Bertie E. Woodson filed her petition against the defendant, Frank Miles, on the 10th day of September, 1951, wherein she alleged that she was the owner of certain specifically described real estate situate in Tulsa County, Oklahoma. The property involved consisted of a twenty-nine room, three story brick hotel; a residence property and a small acreage. The plaintiff alleged that on the 23rd day of August, 1951, the defendant filed in the office of the county clerk a quitclaim deed purporting to convey to him all of the real estate, subject to a life estate in the plaintiff. The plaintiff alleged that she did not execute or deliver the quitclaim deed; that she had no knowledge of such a deed prior to the 8th day of September, 1951; that no consideration was paid by the defendant to the plaintiff for the deed; that the defendant had no right, title or interest therein; that the deed so recorded was fraudulent and void, and she prayed for a cancellation of the deed and a further judgment quieting her title.

The plaintiff Bertie E. Woodson died on the 9th day of October, 1951, and G. A. Sparks was appointed executor of her last will and testament, and the cause was revived in his name.

To the petition of the plaintiff the defendant filed an answer, denying all of the material allegations.

From the record it appears that the deed in question bears date of September 2, 1950, and that it was filed for record on the 23rd day of August, 1951.

It further appears that in the latter part of August, 1951, Bertie E. Woodson became seriously ill and was taken to the hospital and that two days later the deed in question was filed for record.

Bertie E. Woodson died on the 9th day of October, 1951, however, on the 14th day of September, 1951, her deposition was taken in her hospital room.

She testified that she was a widow 51 years of age; that she was the owner of the property involved; she admitted that the signature on the deed was her signature, but at the time that she signed the quitclaim deed it did not contain the description of the property involved in these proceedings, but contained the description of a vacant lot that she had purchased at tax sale, located on Peoria Street, in the City of Tulsa;

that the grantee named in the deed at the time of its execution was one Dr. J. Howard Burt; and that the name of the defendant, Frank Miles, did not appear any where in said deed; that she was paid $75 for the deed; that she had known the defendant for a number of years; and that the defendant had on various occasions suggested that he be permitted to take over and handle her business affairs.

She further testified that the deed in controversy was executed by her at the instance and request of the defendant and on his assurance that it was to convey the vacant property purchased at tax sale.

At the trial it was stipulated that Bertie E. Woodson was the record title owner of the real estate described in her petition at the time of the execution of the deed in question.

At the close of the plaintiff's evidence the defendant demurred and the demurrer was by the court overruled and exceptions allowed.

The overruling of the demurrer to the evidence is one of the principal assignments of error in this appeal.

■ It is well settled law in this jurisdiction that this court, in reviewing a ruling on a demurrer to the evidence, will treat the plaintiff's evidence as true; and if, when so considered, reasonable minds might differ as to the plaintiff's right to recover, the order overruling the demurrer to the evidence will be sustained. Carter Oil Company v. Johnston, Okl., 257 P.2d 817.

The defendant testified stating that he had prepared the deed in question; that the signature of Bertie E. Woodson was genuine; that the deed was signed in his presence; that at the time of the execution of the deed it was in the exact form that it was at the time of the trial; and that said deed was duly acknowledged. He further testified that after the deed was executed that it was delivered to him by the grantor and placed in his safe. He specifically denied that the name of Dr. Burt ever appeared in the deed as grantee, or that the description of the real estate had been altered. He admitted that the deed showed an erasure in the name of the grantee, but explained that the deed originally contained his name as W. F. Miles and that the erasure was made in order to change his name, as grantee, from W. F. Miles to Frank Miles. He further testified that he had written the consideration in the wrong place and that he had used a series of dollar marks to cross this out. He admitted that he placed on the deed $1.10 in Internal Revenue Stamps, indicating a consideration of $1,000, but also admitted that he knew the properties were worth much more than the $1,000. He testified that he was a broker dealing in real estate, admitting, however, that at one time he practiced law in the State of Oklahoma, but that he had ceased to practice but was never disbarred. The defendant further testified to a series of transactions concerning the purchase of the property by which he endeavored to prove a partnership arrangement between himself and the decedent, Bertie E. Woodson. It appears from the record that the consideration for the purchase of the hotel was $11,000, that at the time of the purchase a payment of $1,000 was made on the property, which the defendant contended that he made a portion of said payment. The defendant further admitted that he did not pay anything for the deed at the time of its execution nor had he paid anything since the date of its execution.

The defendant admitted that he had been convicted of subordination of perjury in the Federal Court at Muskogee, and that he had been convicted of obtaining money under false pretense in Tulsa County and had served a term in the State Penitentiary of Oklahoma.

In order to impeach the testimony of the defendant, the plaintiff introduced the testimony of one B. C. Franklin, an attorney who had resided in Tulsa for 32 years, and S. S. Lawrence, an attorney who had been a practicing attorney for 42 years and had lived in Tulsa for 24 years, and each testified that they knew the reputation of the defendant in the community for truth and veracity, and that it was bad. The plaintiff also introduced the testimony of W. W. Jamar, Deputy Court Clerk, who testified that he had been a resident of Tulsa County

for 34 years, that he knew the reputation of the defendant in the community for truth and veracity, and that it was bad.

The plaintiff also introduced the testimony of Tom Collins, County Surveyor of Tulsa County, who testified that the estate of Bertie E. Woodson was indebted to him for surveying, and that the defendant advised him that he would help him get his money if the witness would help the defendant, and he inquired what he meant by "helping him," and the defendant stated that he wanted to establish a partnership with Bertie E. Woodson, and that if the witness would testify that the defendant and the decedent were partners in business, that the defendant would see that he got his money and something extra for his time.

The plaintiff also introduced the testimony of one Alma Berry who testified that the defendant offered to give her a house and permit her to run the hotel if she would testify that she saw Mrs. Woodson sign the deed, and that at the time of the signing of the same that she saw the defendant pay Mrs. Woodson ten $100 bills. A similar proposition was made to the witness, Harry Burton, who testified for the plaintiff.

A number of witnesses were introduced by the plaintiff who testified that the condition of the health of Bertie E. Woodson was such that it would have been physically impossible for her to have left her home in the hotel to go to the office of the defendant on September 2, 1950, to execute the deed.

■ The defendant complains that it was error for the court to permit his impeachment; however, we cannot agree with this contention in view of this court's previous holding in the case of Turner v. Nicholson, 143 Okl. 45, 287 P. 396, wherein it is held a party to a civil action who testifies may be impeached, the credibility of a witness may be attacked by proof that his general reputation for truth and veracity is bad; and where a party to a suit voluntarily becomes a witness and gives material evidence in the case, such party's testimony is subject to impeachment and contradiction in the same manner as that of any other witness.

In fairness to the defendant it should be stated that he denied practically all of the testimony above related and that he also introduced the testimony of a minister by the name of E. W. James, and the testimony of a witness by the name of Andy Stokes, who was formerly a court clerk of Tulsa County, and that both of these witnesses testified that they knew the defendant's reputation in the community for truth and veracity, and that it was good.

■ The trial court had the opportunity to hear the witnesses testify, to observe the demeanor while on the witness stand and to determine their interest, if any, in the outcome of the litigation; and it has been held by this court repeatedly that in an action of equitable cognizance this court will examine the entire record and weigh the evidence and will not disturb the judgment of the trial court where it is not clearly against the weight of the evidence. Woodruff v. Woodruff, 206 Okl. 3, 240 P.2d 74; King v. Cade, 205 Okl. 666, 240 P.2d 88, and Frey v. Glenn, 206 Okl. 28, 240 P.2d 1061.

■ From the reading of the record in this cause we find that there was ample evidence to support the finding and judgment of the trial court. The judgment appealed from is affirmed.

This Court acknowledges the services of Attorneys Lockwood Jones, J. T. Bailey and Lloyd Clearman, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.